## THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) ) ) | Case No. |
| Plaintiff. | ) ) | |
| v. | ) ) | |
| MICHAEL PADRON, MARIA PADRON, JOE ALEX MUNIZ, MICHAEL WIBRACHT, LAURA WIBRACHT, RUEBEN VILLARREAL, MANUELA VILLARREAL, JAMES BRIAN TAYLOR, FAMEEDA TAYLOR, STEVEN WIBRACHT, ERIN WIBRACHT, RAYMOND JENKINS, WENDY JENKINS, MAPCO, INC., CDI VENTURES, INC., AMCO STEEL FABRICATION, LLC, BLACKHAWK VENTURES, LLC D/B/A BLACKHAWK CONSTRUCTORS, PROMASTERS CONSTRUCTION, INC., JAMCO VENTURES, LLC, HOMELAND CONSTRUCTION, INC., MBH VENTURES, LLC, MILCON CONSTRUCTION, LLC, TEAM JAMA, CORE LOGISTICS SERVICES, LLC D/B/A CORE CONSTRUCTORS, WPS GROUP, LLC D/B/A FEDERAL MANAGEMENT SOLUTIONS, PADRON ENTERPRISES, INC., BLACKHAWK-JAMCO A SDVO, LLC, BLACKHAWK/JAMCO JV2 | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) ) ) ) | |

)
)
)
)
)
)
)

## PLAINTIFF'S ORIGINAL COMPLAINT FOR
## INDEMNITY, EQUITABLE, AND OTHER RELIEF

Plaintiff, Travelers Casualty and Surety Company of America ("Travelers" or "Company"), by and through counsel, respectfully submits its Original Complaint for Indemnity, Equitable, and Other Relief against the Defendants identified above and herein as follows:

## I.      PARTIES

1.      Travelers is a corporation formed under the laws of the State of Connecticut with its principal place of business located in Hartford, Connecticut, which is the location from which Travelers' high level officers direct, control, and coordinate Travelers' corporate activities. Travelers is duly qualified and authorized to transact business within the State of Texas.

2.      Upon information and belief, Defendant Michael Padron is a citizen of the State of Texas, who may be served with process at 113 S. Tower Drive, San Antonio, TX 78232.

3.      Upon information and belief, Defendant Maria Padron is a citizen of the State of Texas, who may be served with process at 29739 Twin Creeks Drive, Bulverde, TX 78163.

4.      Upon information and belief, Defendant Joe Alex Muniz, is a citizen of the State of Texas, who may be served with process at 831 S. Flores Street #2305, San Antonio, Texas 78204.

5.      Upon information and belief, Defendant Michael Wibracht is a citizen of the State of Texas, who may be served with process at 3953 Fossil Rock, San Antonio, Texas 78261.

6.      Upon information and belief, Defendant Laura Wibracht is a citizen of the State of Texas, who may be served with process at 3953 Fossil Rock, San Antonio, Texas 78261.

7.      Upon information and belief, Defendant Rueben Villarreal is a citizen of the State of Texas, who may be served with process at 530 Country Road 161, Floresville, Texas 78114.

8.      Upon information and belief, Defendant Manuela Villarreal is a citizen of the State of Texas, who may be served with process at 530 Country Road 161, Floresville, Texas 78114.

9.      Upon information and belief, Defendant James Brian Taylor is a citizen of the State of Texas, who may be served with process at 422 Blue Springs, San Antonio, Texas 78260.

10.      Upon information and belief, Defendant Fameeda Taylor is a citizen of the State of Texas, who may be served with process at 422 Blue Springs, San Antonio, Texas 78260.

11.      Upon information and belief, Defendant Steven Wibracht is a citizen of the State of Texas, who may be served with process at 536 E. Borgfield Road, San Antonio, Texas 78260.

12.      Upon information and belief, Defendant Erin Wibracht is a citizen of the State of Texas, who may be served with process at 536 E. Borgfield Road, San Antonio, Texas 78260.

13.      Upon information and belief, Defendant Raymond Jenkins is a citizen of the State of Texas, who may be served with process at 260 Rainbow Drive, Lakehills, Texas 78063.

14.      Upon information and belief, Defendant Wendy Jenkins is a citizen of the State of Texas, who may be served with process at 260 Rainbow Drive, Lakehills, Texas 78063.

15.      Upon information and belief, Defendant MAPCO, Inc. ("MAPCO") was and is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in San Antonio, Texas, which is the location from which MAPCO's high-level officers direct, control, and coordinate MAPCO's corporate activities.  Thus, MAPCO is a citizen of the

State of Texas for purposes of 28 U.S.C. § 1332(a).   MAPCO may be served with process through its registered agent, Samantha Garcia, at 427 W. Cevallos, San Antonio, Texas 78204.

16.    Upon information and belief, Defendant CDI Ventures, Inc. ("CDI") was and is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in San Antonio, Texas, which is the location from which CDI's high-level officers direct, control, and coordinate CDI's corporate activities.   Thus, CDI is a citizen of the State of Texas for purposes of 28 U.S.C. § 1332(a). CDI may be served with process through its registered agent, Robert A. Livar, at 3422 General Hudnell, San Antonio, Texas 78226.

17.    Upon information and belief, Defendant Amco Steel Fabrication, LLC ("Amco") was and is a limited liability company organized and existing under the laws of the State of Texas whose sole member, Albert Macias, is a citizen of the State of Texas.  Amco is therefore a citizen of the State of Texas for purposes of 28 U.S.C. § 1332(a).  Amco may be served with process through its Registered Agent, Albert Macias, at 603 Perrin, San Antonio, TX 78226.

18.    Upon information and belief, Defendant Blackhawk Ventures, LLC d/b/a Blackhawk Constructors ("Blackhawk") was and is a limited liability company organized and existing under the laws of the State of Texas whose sole member, Rueben Villarreal, is a citizen of the State of Texas.  Blackhawk is therefore a citizen of the State of Texas for purposes of 28 U.S.C. § 1332(a).  Blackhawk may be served with process through its Registered Agent, Johnathan M. Bailey, at 230 Pereida Street, San Antonio, TX 78210.

19.    Upon information and belief, Defendant Promasters Construction, Inc. ("Promasters") was and is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in San Antonio, Texas, which is the location from which Promaster's high-level officers direct, control, and coordinate Promaster's corporate activities.

Thus, Promasters is a citizen of the State of Texas for purposes of 28 U.S.C. § 1332(a). Promasters may be served with process at 1001 Austin Highway, San Antonio, Texas 78209.

20.     Upon information and belief, Defendant Jamco Ventures, LLC ("Jamco Ventures") was and is a limited liability company organized and existing under the laws of the State of Texas whose sole member, Joe Alex Muniz, is a citizen of the State of Texas.  Jamco Ventures is therefore a citizen of the State of Texas for purposes of 28 U.S.C. § 1332(a).  Jamco Ventures may be served with process through its Registered Agent, Joe Alex Muniz, at 1502 S Flores Street, San Antonio, TX 78204.

21.     Upon information and belief, Defendant Homeland Construction, Inc. ("Homeland") was and is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in San Antonio, Texas, which is the location from which Homeland's high-level officers direct, control, and coordinate Homeland's corporate activities. Thus, Homeland is a citizen of the State of Texas for purposes of 28 U.S.C. § 1332(a). Homeland may be served with process through its registered agent, Samantha Garcia, at 427 W Cevallos, San Antonio, TX 78204.

22.     Upon information and belief, Defendant MBH Ventures, LLC ("MBH Ventures") was and is a limited liability company organized and existing under the laws of the State of Texas, whose members, MAPCO and Blackhawk, are citizens of the State of Texas for purposes of 28 U.S.C. § 1332(a).  MBH Ventures is therefore a citizen of the State of Texas for purposes of 28 U.S.C. § 1332(a). MBH Ventures may be served with process through Michael Padron at 113 S. Tower Drive, San Antonio, TX 78232 and/or Rueben Villarreal at 530 Country Road 161, Floresville, Texas 78114, each of whom is, upon information and belief, is an officer or managing/general agent of MBH Ventures.

23.     Upon information and belief, Defendant MILCON Construction, LLC ("MILCON Construction") was and is a limited liability company organized and existing under the laws of the State of Texas whose sole member, Armando A. Aranda, Jr., is a citizen of the State of Texas. MILCON Construction is therefore a citizen of the State of Texas for purposes of 28 U.S.C. § 1332(a). MILCON Construction may be served with process through its Registered Agent, Johnathan M. Bailey, at 230 Pereida Street, San Antonio, TX 78210.

24.     Upon information and belief, Defendant Team JAMA was and is a joint venture existing under Texas law between MAPCO and Jamco Ventures, who are each citizens of the State of Texas for purposes of 28 U.S.C. § 1332(a). Team JAMA is therefore a citizen of the State of Texas for purposes of 28 U.S.C. § 1332(a). Team JAMA may be served with process through Michael Padron at 113 S. Tower Drive, San Antonio, TX 78232 and/or 831 S. Flores Street #2305, San Antonio, Texas 78204, each of whom, upon information and belief, is an officer or managing/general agent of Team JAMA.

25.     Upon information and belief, Defendant Core Logistics Services, LLC d/b/a Core Constructors ("Core Constructors") was and is a limited liability company organized and existing under the laws of the State of Texas whose members, Michael Wibracht, Steven Wibracht, Clifford Boultinghouse, and Raymond Jenkins are citizens of the State of Texas. Core Constructors is therefore a citizen of the State of Texas for purposes of 28 U.S.C. § 1332(a). Core Constructors may be served with process through its Registered Agent, Thomas S. Harmon, at 2701 Treble Creek, San Antonio, TX 78258.

26.     Upon information and belief, Defendant WPS Group, LLC d/b/a Federal Management Solutions ("FMS") was and is a limited liability company organized and existing under the laws of the State of Texas whose members, Michael Padron and James Brian Taylor, are

citizens of the State of Texas. FMS is therefore a citizen of the State of Texas for purposes of 28 U.S.C. § 1332(a). FMS may be served with process through its Registered Agent, Johnathan M. Bailey, at 230 Pereida Street, San Antonio, TX 78210.

27.     Upon information and belief, Defendant Padron Enterprises, Inc. ("Padron Enterprises") was and is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in San Antonio, Texas, which is the location from which Padron Enterprises' high-level officers direct, control, and coordinate Padron Enterprise's corporate activities. Thus, Padron Enterprises is a citizen of the State of Texas for purposes of 28 U.S.C. § 1332(a). Padron Enterprises may be served with process through its registered agent, Michael Padron, at 427 W Cevallos, San Antonio, TX 78402.

28.     Upon information and belief, Blackhawk-Jamco a SDVO, LLC ("Blackhawk-Jamco SDVO") was and is a limited liability company organized and existing under the laws of the State of Texas whose members, Blackhawk and Jamco Ventures, are citizens of the State of Texas. Blackhawk-Jamco SDVO is therefore a citizen of the State of Texas for purposes of 28 U.S.C. § 1332(a). Blackhawk-Jamco SDVO may be served with process through its Registered Agent, Samantha Garcia, at 427 W Cevallos, San Antonio, TX 78204.

29.     Upon information and belief, Defendant Blackhawk/Jamco JV2 ("Blackhawk-Jamco JV2") was and is a joint venture existing under Texas law between Blackhawk and Jamco Ventures, who are citizens of the State of Texas. Blackhawk-Jamco JV2 is therefore a citizen of the State of Texas for purposes of 28 U.S.C. § 1332(a). Blackhawk-Jamco JV2 may be served with process through Rueben Villarreal at 530 Country Road 161, Floresville, Texas 78114 and/or Joe Alex Muniz at 831 S. Flores Street #2305, San Antonio, Texas 78204, each of whom, upon information and belief, is an officer or managing/general agent of Blackhawk-Jamco JV2.

## II.      JURISDICTION AND VENUE

30.     This Court possesses original jurisdiction over Travelers' claims under 28 U.S.C. § 1332(a) because the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and the matter in controversy is between citizens of different states.

31.     This Court possesses the power to declare the respective rights and other legal relations of the parties as requested herein under 28 U.S.C. § 2201(a).

32.     This Court possesses the power to grant the injunctive relief requested herein under rule 65 of the Federal Rules of Civil Procedure.

33.     Venue is proper in the United States District Court for the Western District of Texas, San Antonio Division, under 28 U.S.C. § 124(d)(4) and 28 U.S.C. § 1391(b)(1) because one or more of the Defendants reside in the Western District of Texas, San Antonio Division, and all of the Defendants are residents/citizens of the State of Texas.  Moreover, under the General Agreement of Indemnity and Additional Indemnitor Riders detailed below, the Defendants irrevocably and unconditionally submitted to the exclusive jurisdiction (at the sole and exclusive option of Travelers) of this Court, and the Indemnitors have agreed not to assert any claim that they are not subject to the jurisdiction of this Court, agreed not to assert that this Court is an inconvenient forum, and agreed not to assert that venue in this Court is improper.

## III.      FACTUAL ALLEGATIONS

### A.      The Indemnity Agreement and the Additional Indemnitor Riders

34.     On or about September 16, 2008, Michael Padron, Maria Padron, Joe Alex Muniz, Albert Macias, Michael Wibracht, Laura Wibracht, Manuel G. Villanueva, Rueben Villarreal, Manuela Villarreal, Robert Padron, Josephine Padron, Michael Martinez, Sandra Martinez, Robert Livar, Rosemary Livar, Armando Aranda, Jr., Sara Aranda, MAPCO, CDI, Amco, Blackhawk,

Promasters, Jamco Ventures, Homeland, MBH Ventures, and MILCON Construction executed the General Agreement of Indemnity attached hereto as **Exhibit 1** on behalf of Travelers (the "General Agreement of Indemnity").

35.     On or about September 30, 2010, Team JAMA executed the General Agreement of Indemnity Additional Indemnitor Rider attached hereto as **Exhibit 2** on behalf of Travelers.

36.     On or about March 14, 2011, Core Constructors, FMS, and Blackhawk executed the General Agreement of Indemnity Additional Indemnitor Rider attached hereto as **Exhibit 3** on behalf of Travelers.

37.     On or about January 3, 2013, Padron Enterprises executed the General Agreement of Indemnity Additional Indemnitor Rider attached hereto as **Exhibit 4** on behalf of Travelers.

38.     On or about April 10, 2013, James Brian Taylor, Fameeda Taylor, Steven Wibracht, Erin Wibracht, Raymond Jenkins, and Wendy Jenkins executed the General Agreement of Indemnity Additional Indemnitor Rider attached hereto as **Exhibit 5** on behalf of Travelers.

39.      Each of the General Agreement of Indemnity Additional Indemnitor Riders attached hereto as Exhibits 2, 3, 4, and 5 (collectively, the "Additional Indemnitor Riders") provides, in pertinent part:

> This Rider is hereby incorporated into, and forms a part of, the General Agreement of Indemnity . . . . in favor of Travelers Casualty and Surety Company of America, St. Paul Fire and Marine Insurance Company, and of their present or future direct or indirect parent companies, and/or any of the aforementioned entities' successors or assigns ("Company") and dated September 16, 2008 ("Agreement").

> [Each signatory] ("Undersigned") shall become an additional Indemnitor to the Agreement bound by all of the terms and conditions of the Agreement.  The Undersigned agrees that all capitalized terms used in this Rider but not defined herein are used with the meanings given them in the Agreement.

> The Undersigned acknowledges he/she has read the Agreement carefully.  There are no separate agreements or understandings which in any way lessen the obligations as set forth m the Agreement.  The Undersigned has a substantial,

material and beneficial interest (a) in the obtaining of Bonds by any of the Indemnitors; and (b) in the transaction(s) for which any other Indemnitor has applied or will apply to Company for Bonds pursuant to the Agreement. The Undersigned has the full power and authority to execute, deliver and perform the Agreement and to carry out the obligations stated therein. The Undersigned further acknowledges and agrees that: (x) the execution, delivery and performance of the Agreement; (y) the compliance with the terms and provisions thereof; and (z) the carrying out of the obligations contemplated therein, do not. and will not, conflict with and will not result in a breach or violation of any terms, conditions or provisions of the charter documents or bylaws of Undersigned, or any law, governmental rule or regulation, or any applicable order, writ, injunction, judgment or decree of any court or governmental authority against Undersigned, or any other agreement binding upon Undersigned, or constitute a default thereunder.

This Rider shall: (1) not relieve, reduce, diminish or lessen the obligations of any other Indemnitor from any obligations set forth  in  the  Agreement ;  and  (2) not  limit  Company's  rights  and/or  remedies  under  the  Agreement.

40.      The General Agreement of Indemnity hereto as Exhibit 1 and the Additional

Indemnitor Riders attached  hereto as Exhibits 2, 3, 4, and 5 (collectively, the "Indemnity

Agreement") define "Bond" as follows:

Any and all bonds, undertakings, guarantees, contractual obligations, and writings or statements of prequalification or commitment, including Modifications thereof, for which Company has an obligation as a result of an asset purchase, acquisition, merger or like transaction, issued for, or which Company has executed or procured for or on behalf of: (a) any one or more of the Indemnitors (without regard to whether any such Indemnitor signed this Agreement), their respective present or future direct or indirect parent companies, subsidiaries and affiliates and all of their respective successors and assigns; (b) any present or future joint venture, co-venture, consortium, partnership, trust, association, limited liability company or other legal entity in which one or more of the persons or entities identified in sub-paragraph (a) above have an interest; (c) any other person or entity at the request of any of the Indemnitors; or (d) any combination of the above, whether executed or procured before, on, or after the execution of this Agreement. For the purpose of this definition, "Modifications" shall include but not be limited to renewals, substitutions, riders, endorsements, reinstatements, replacements, increases or decreases in penal sum, continuations, and extensions.

(The "Bond").

41.      The Indemnity Agreement defines "Company" as follows:

Travelers Casualty and Surety Company of America, St. Paul Fire and Marine Insurance Company, or any other present or future direct or indirect parent companies, any of the respective present or future direct or indirect affiliates or subsidiaries of such companies and parent companies, and/or any of the aforementioned entities' successors or assigns.

(The "Company").

42.     The Indemnity Agreement defines "Contract" as "[a]ny contract or obligation the performance which is guaranteed or covered either in whole or in part under a Bond."  (The "Contract").

43.     The Indemnity Agreement defines "Default" as follows:

Any of the following shall constitute a Default: (a) a declaration of Contract default by any Obligee; (b) actual breach or abandonment of any Contract; (c) a breach of any provision of this Agreement; (d) failure to make payment of a properly due and owing bill in connection with any Contract; (e) Company's good faith establishment of a reserve; (f) improper diversion of Contract funds or any Indemnitor's assets to the detriment of Contract obligations; (g) any Indemnitor's becoming the subject of any proceeding or agreement of bankruptcy, receivership, insolvency, or creditor assignment, or actually becoming insolvent; (h) any Indemnitor's dying, becoming legally incompetent, being imprisoned, being convicted of a felony, or disappearing and being unable to be located; (i) any representation furnished to Company by or on behalf of any Indemnitor proving to have been materially false or misleading when made; and/or (j) any change in control or existence of any Indemnitor. Change of control means the addition or departure of any person or entity having a 10% or greater ownership interest in any Indemnitor.

(The "Default").

44.     The Indemnity Agreement defines "Indemnitors" as follows:

Undersigned, all new Indemnitors added to this Agreement by rider, their present and future direct and indirect subsidiaries, affiliates, and parent companies, and all of their successors and assigns, and any joint venture, co-venture, consortium, partnership, trust, association, limited liability company or other legal entity in which one or more of them are involved, whether in existence now or formed or acquired hereafter, and any entity that obtains Bonds from Company at the request of any of the aforementioned parties, or any combination of the above.

(The "Indemnitors").

45.     The Indemnity Agreement defines "Loss" as follows:

All loss and expense of any kind or nature, including attorneys' and other professional fees, which Company incurs in connection with any Bond or this Agreement, including but not limited to all loss and expense incurred by reason of Company's: (a) making any investigation in connection with any Bond; (b) prosecuting or defending any action in connection with any Bond; (c) obtaining the release of any Bond; (d) recovering or attempting to recover Property in connection with any Bond or this Agreement; (e) enforcing by litigation or otherwise any of the provisions of this Agreement; and (f) all interest accruing thereon at the maximum legal rate.

(The "Loss").

46.     The Indemnity Agreement defines "Obligee" as "[a]ny person or entity in whose favor a Bond has been issued, and that person's or entity's successors and assigns."   (The "Obligee").

47.     The Indemnity Agreement defines "Property" as follows:

Indemnitors' rights, title and interest, whether now held or hereafter acquired in: (a) any Contract or contract, including but not limited to subcontracts let; (b) any and all sums due or which may hereafter become due under any Contract or contract, and all damage claims and proceeds related thereto; (c) all rights arising under any surety bonds or insurance policies; and (d) any and all accounts receivable, letters of credit, documents of title, bills of lading, warehouse receipts, machinery, plants, equipment, tools, materials, supplies, inventory, vehicles, hardware, software, machine tools, fixtures, office equipment, books, records, designs, licenses, patents, intellectual property, as-builts, construction drawings and documents, and all electronically stored information.

(The "Property").

48.     With respect to duty of the Indemnitors to exonerate, indemnify, and save Travelers harmless, Paragraph 3 of the Indemnity Agreement, entitled "Indemnification and Hold Harmless," provides:

Indemnitors shall exonerate, indemnify and save Company harmless from and against all Loss.  An itemized, sworn statement by an employee of Company, or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability.  Amounts due to Company shall be payable upon demand.

49.     With respect to Travelers' right, in its sole discretion, to settle any claim submitted against any "Bond," Paragraph 4 of the Indemnity Agreement, entitled "Claim Settlement" provides:

> Company shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against Company or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors.  Company shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

50.     With respect to the duty of the Indemnitors duty to collateralize Travelers upon demand, Paragraph 5 of the Indemnity Agreement, entitled "Collateral Security," provides:

> Indemnitors agree to deposit with Company, upon demand, an amount as determined by Company sufficient to discharge any Loss or anticipated Loss. Indemnitors further agree to deposit with Company, upon demand, an amount equal to the value of any assets or Contract funds improperly diverted by any Indemnitors. Sums deposited with Company pursuant to this paragraph may be used by Company to pay such claim or be held by Company as collateral security against any Loss or unpaid premium on any Bond.  Company shall have no duty to invest, or provide interest on, the deposit.  Indemnitors agree that Company would suffer irreparable damage and would not have an adequate remedy at law if Indemnitors fail to comply with the provisions of this paragraph.

51.     With respect to Travelers' remedies against the Indemnitors, Paragraph 6 of the Indemnity Agreement, entitled "Remedies," provides:

> In the event of a Default, Indemnitors assign, convey and transfer to Company all of their rights, title and interests in Property, and Company shall have a right in its sole discretion to; (a) take possession of the Work under any Contract and to complete said Contract, or cause, or consent to, the completion thereof; (b) immediately take possession of Indemnitors' Property, and utilize the Property for the completion of the work under the Contracts without payment for such use; (c) assert or prosecute any right or claim in the name of any Indemnitor and to settle any such right or claim as Company sees fit; (d) execute in the name of any Indemnitor, any instruments deemed necessary or desirable by Company to: (i) provide Company with title to assets, (ii) take immediate possession of Contract funds whether earned or unearned, (iii) collect such sums as may be due Indemnitors  and  to endorse in the  name of Indemnitors, and (iv) collect on any

negotiable Instruments; (e) require any Obligee to withhold payment of Contract funds unless and until Company consents to its release; (f) be subrogated to all the rights, remedies, properties, funds, securities and receivables relating to Indemnitors' Contracts or contracts and have the right to offset losses on any Contract or Bond against proceeds, funds, or property due from another Contract, bond or contract. Further, in the event or Default and upon demand Indemnitors shall direct that all payments, monies, and properties that are due or may become due on any Contract or contract be made payable to, and/or sent directly to, Company, and shall Issue whatever writing or notices as deemed necessary by Company to effectuate the default and/or termination of any Contract.

52.     With respect to the joint and several nature of the liability/obligations of the Indemnitors to Travelers, Paragraph 7 of the Indemnity Agreement, entitled "Joint and Several Liability," provides:

> The obligations of Indemnitors hereunder are joint and several.  Company is authorized to settle with any one or more of the Indemnitors individually, and without reference to the others, and any such settlement shall not bar or prejudice actions by Company against or affect the liability of the other Indemnitors hereunder.

53.     With respect to the duty of the Indemnitors to hold any funds due/received under any Contract in trust for the payment of all obligations for which Travelers may be liable under any Bond, Paragraph 9 of the Indemnity Agreement, entitled "Trust Fund," provides:

> All payments due or received for or on account of any Contract, whether or not in the possession of any Indemnitor, shall be held in trust as trust funds by Indemnitors for the benefit and payment of all obligations for which Company as beneficiary may be liable under any Bond.  Company may open a trust account or accounts with a bank for the deposit of the trust funds.  Upon demand, Indemnitors shall deposit therein all trust funds received.  Withdrawals from such trust accounts shall require the express consent of Company.

54.     With respect to duty of the Indemnitors to provide Travelers free access to their books, records, and related financial information, Paragraph 10 of the Indemnity Agreement, entitled "Books, Records, and Credit," provides:

> Indemnitors shall furnish upon demand, and Company shall have the right of free access to, at reasonable times, the records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information,

accounts and electronically stored information, for the purpose of examining and copying them. Indemnitors expressly authorize Company to access their credit records, including, but not limited to, account numbers and/or account balances from financial institutions. To the extent required by law, Indemnitors, upon request, shall be informed whether or not a consumer report has been requested by Company, and if so, of the name and address of the consumer reporting agency furnishing the report.

55.    With respect to the sole method of terminating the liability of the Indemnitors to

Travelers under the Indemnity Agreement, Paragraph 13 of the Indemnity Agreement, entitled

"Termination," provides:

> This is a continuing Agreement, which remains in full force and effect until terminated. The sole method available to Indemnitors to terminate their participation in this Agreement is by giving written notice to Company of Indemnitors' intent to terminate. Such notice shall be sent to St. Paul Travelers Bond, Attention: Construction Services - Bond, One Tower Square, 5PB, Hartford, Connecticut 05183. The termination shall take effect thirty (30) days after Company receives such notice ('Termination Date"). The notice shall not relieve Indemnitor from Its obligations for any Bond executed prior to the Termination Date or with respect to any Bond executed after the Termination Date: (a) upon the award of a Contract to any Indemnitor on a bid or proposal in respect of which Company has executed or procured a bid Bond prior to the Termination Date; or (b) which Company has become committed to execute or procure prior to the Termination Date; or (c) in connection with any maintenance, guarantee, claim, lien, litigation, or other matter involving or relating to any Bond executed prior to the Termination Date or thereafter executed or procured as provided in sub-paragraphs (a) or (b) above.

56.    With respect to the consent of the Indemnitors to jurisdiction and venue in this

Court, Paragraph 14 of the Indemnity Agreement, entitled "Jurisdiction," provides:

> In any legal proceeding brought by or against Company that in any way relates to this Agreement, each Indemnitor, for itself and its property, irrevocably and unconditionally submits to the exclusive jurisdiction, at the sole and exclusive option of Company, of the courts in any state in which any Indemnitor resides, has property, or in which any contract is performed. Indemnitors hereby irrevocably and unconditionally submit to the jurisdiction of said courts and waive and agree not to assert any claim that they are not subject to the jurisdiction of any such court, that such proceeding is brought in an inconvenient forum or that the venue of such proceeding is improper.

57.     With respect to the nature of Travelers' rights against the Indemnitors and Travelers' right to compel specific performance of the terms of the Indemnity Agreement, Paragraph 16 of the Indemnity Agreement, entitled "Nature of Rights," provides:

> If any provision or portion of this Agreement is or becomes unenforceable, this Agreement shall not be void, but shall be construed and enforced with the same effect as through such provision or portion were omitted.  This Agreement is in addition to and not in lieu of any other agreement of Indemnity, whether now existing or entered into hereafter.  Company shall be entitled to specific performance of the terms of this Agreement in addition to any other remedy at law or equity.  Time is of the essence in this Agreement.  Whenever the context may require, any pronoun used in this Agreement shall include the corresponding masculine, feminine and neuter forms.  The rights and remedies afforded to Company by the terms of this Agreement can only be modified by a written rider to this Agreement signed by an authorized representative of Company.  If any Indemnitor fails to execute or improperly executes this Agreement or is otherwise found not to be bound under this Agreement, such failure or finding shall not affect the obligations of the other Indemnitors.  The failure to sign or the improper execution of a Bond shall not affect Company's rights under this Agreement, and Indemnitors waive any claim they may have, now or at any time in the future, arising out of the failure to sign or properly execute a Bond.  Termination and/or limitation of any Indemnitors' obligations under this Agreement shall in no way affect the obligations of any of the other Indemnitors whose obligations have not been terminated and/or limited.  Indemnitors acknowledge this Agreement can be amended via rider to add another person, entity or entities as Indemnitor(s) to this Agreement and Indemnitors waive any and all notice in connection with the addition of additional Indemnitors and further acknowledge the rights and obligations provided herein shall apply to all Indemnitors whenever made a party to the Agreement.

58.     With respect to the waiver of any right of the Indemnitors to a jury trial relative to the Indemnity Agreement, Paragraph 17 of the Indemnity Agreement provides, "Indemnitors hereby waive and covenant that they will not assert a right to trial by jury in respect to any legal proceeding arising out of this Agreement."

B.     **Identification of the Defendant Indemnitors**

59.     Michael Padron qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of his execution of the General Agreement of Indemnity on behalf of Travelers.

60.     Maria Padron qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of her execution of the General Agreement of Indemnity on behalf of Travelers.

61.     Joe Alex Muniz qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of his execution of the General Agreement of Indemnity on behalf of Travelers, but his individual indemnity, collateral, and other obligations are limited to Jamco Ventures under Paragraph 20 of the Indemnity Agreement.

62.     Michael Wibracht qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of his execution of the General Agreement of Indemnity on behalf of Travelers, but his individual indemnity, collateral, and other obligations are limited to Blackhawk and MBH Ventures under Paragraph 20 of the Indemnity Agreement.

63.     Laura Wibracht qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of her execution of the General Agreement of Indemnity on behalf of Travelers, but her individual indemnity, collateral, and other obligations are limited to Blackhawk and MBH Ventures under Paragraph 20 of the Indemnity Agreement.

64.     Rueben Villarreal qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of his execution of the General Agreement of Indemnity on behalf of Travelers, but his individual indemnity, collateral, and other obligations are limited to Blackhawk and MBH Ventures under Paragraph 20 of the Indemnity Agreement.

65.     Manuela Villarreal qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of her execution of the General Agreement of Indemnity on behalf of

Travelers, but her individual indemnity, collateral, and other obligations are limited to Blackhawk and MBH Ventures under Paragraph 20 of the Indemnity Agreement.

66.     MAPCO qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of its execution of the General Agreement of Indemnity on behalf of Travelers.

67.     CDI qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of its execution of the General Agreement of Indemnity on behalf of Travelers.

68.     Amco qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of its execution of the General Agreement of Indemnity on behalf of Travelers.

69.     Blackhawk qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of its execution of the General Agreement of Indemnity on behalf of Travelers and by virtue of its execution of the General Agreement of Indemnity Additional Indemnitor Rider attached hereto as Exhibit 3.

70.     Promasters qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of its execution of the General Agreement of Indemnity on behalf of Travelers.

71.     Jamco Ventures qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of its execution of the General Agreement of Indemnity on behalf of Travelers.

72.     Homeland qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of its execution of the General Agreement of Indemnity on behalf of Travelers.

73.     MBH Ventures qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of its execution of the General Agreement of Indemnity on behalf of Travelers.  MBH Ventures also qualifies as one of the Indemnitors under the Indemnity Agreement because it is a limited liability company in which one or more of the Indemnitors is involved (MAPCO and Blackhawk).

74.     MILCON Construction qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of its execution of the General Agreement of Indemnity on behalf of Travelers.

75.     Team JAMA qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of its execution of the General Agreement of Indemnity Additional Indemnitor Rider attached hereto as Exhibit 2.  Team JAMA also qualifies as an Indemnitor under the Indemnity Agreement because it is a joint venture in which one or more of the Indemnitors is involved (MAPCO and Jamco Ventures).

76.     Core Constructors qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of its execution of the General Agreement of Indemnity Additional Indemnitor Rider attached hereto as Exhibit 3. Core Constructors also qualifies as one of the Indemnitors under the Indemnity Agreement because it is a limited liability company in which one or more of the Indemnitors is involved (Michael Wibracht, Steven Wibracht, and Raymond Jenkins).

77.     FMS qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of its execution of the General Agreement of Indemnity Additional Indemnitor Rider attached hereto as Exhibit 3.

78.     Padron Enterprises qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of its execution of the General Agreement of Indemnity Additional Indemnitor Rider attached hereto as Exhibit 4.  Padron Enterprises also qualifies as an Indemnitor under the Indemnity Agreement because it is the parent company of one of the Indemnitors (Homeland).

79.     James Brian Taylor qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of his execution of the General Agreement of Indemnity Additional Indemnitor Rider attached hereto as Exhibit 5.

80.     Fameeda Taylor qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of her execution of the General Agreement of Indemnity Additional Indemnitor Rider attached hereto as Exhibit 5.

81.     Steven Wibracht qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of his execution of the General Agreement of Indemnity Additional Indemnitor Rider attached hereto as Exhibit 5.

82.     Erin Wibracht qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of her execution of the General Agreement of Indemnity Additional Indemnitor Rider attached hereto as Exhibit 5.

83.     Raymond Jenkins qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of his execution of the General Agreement of Indemnity Additional Indemnitor Rider attached hereto as Exhibit 5.

84.     Wendy Lee Jenkins qualifies as one of the Indemnitors under the Indemnity Agreement by virtue of her execution of the General Agreement of Indemnity Additional Indemnitor Rider attached hereto as Exhibit 5.

85.     Blackhawk-Jamco SDVO qualifies as one of the Indemnitors under the Indemnity Agreement because it is a limited liability company in which one or more of the Indemnitors is involved (Blackhawk and Jamco Ventures).

86.     Blackhawk-Jamco JV2 qualifies as one of the Indemnitors under the Indemnity Agreement because it is a joint venture in which one or more of the Indemnitors is involved (Blackhawk and Jamco Ventures).

### C.     Scope of the Indemnity, Collateral, and Other Obligations of the Indemnitors

87.     Under the Indemnity Agreement, the joint and several duties and obligations of the following Defendants extend to any Bond issued on behalf of or at the request of any of the Indemnitors: Michael Padron, Maria Padron, MAPCO, CDI, Amco, Blackhawk, Promasters, Jamco Ventures, Homeland, MBH Ventures, MILCON Construction, Team JAMA, Core, FMS, Padron Enterprises, James Briar Taylor, Fameeda Taylor, Steven Wibracht, Erin Wibracht, Raymond Jenkins, Wendy Jenkins, MBH Ventures, Team JAMA, and Blackhawk-Jamco SDVO, and Blackhawk-Jamco JV2 (collectively, the "Unlimited Indemnity Indemnitors").

88.     Under the Indemnity Agreement, the duties and obligations of Joe Alex Muniz extend to any Bond issued on behalf of Jamco Ventures or any joint venture involving Jamco Ventures (such as Blackhawk-Jamco SDVO and Blackhawk-Jamco JV2).

89.     Under the Indemnity Agreement, the joint and several obligations of the following Indemnitors extend to any Bond issued on behalf of Blackhawk or MBH Ventures or any joint venture involving Blackhawk or MBH Ventures (such as Blackhawk-Jamco SDVO and Blackhawk-Jamco JV2): Michael Wibracht, Laura Wibracht, Rueben Villarreal, and Manuela Villarreal (collectively, the "Blackhawk & MBH Ventures Indemnitors").

### D.     Travelers' Loss, Anticipated Loss, and Reserve

90.     In reliance upon its rights under the Indemnity Agreement, Travelers issued numerous Bonds on behalf of and/or at the request of one or more of the "Indemnitors."

91.     Among the Bonds are payment bonds, performance bonds, and related surety bonds naming MAPCO, CDI, Blackhawk, Jamco Ventures, MILCON Construction, Team JAMA, J&M Constructors, JAMA Constructors, Jamco Group, and Blackhawk-Jamco SDVO the principal obligors relative to "Contracts" that have not yet been completed (collectively, the "Bonded Work in Progress").

92.     Travelers has received and/or is aware of claims exceeding $5,500,000 under certain Bonds naming Blackhawk or Blackhawk-Jamco SDVO as the principal obligor (collectively, the "Blackhawk Claims") that include, without limitation, the following:

| Bond Number: | Bond Principal: | Project: |
| --- | --- | --- |
| 105682451 | Blackhawk Ventures, LLC | W9126G-09-0093/D.O. #0007 |
| 105744675 | Blackhawk Ventures, LLC | W9126G-09-0093/D.O. #10 – Battle Command Training Center |
| 105744678 | Blackhawk-Jamco, A SDVO Joint Venture | Army Reserve Center, West Palm Beach, Florida |
| 105933053 | Blackhawk Ventures, LLC | VA101F-13-C-0055- Parking Structure – Long Term Spinal Cord Injury Center, VAMC, Dallas, Texas |
| 105816343 | Blackhawk Ventures, LLC | W9127S-09-D-6008-D.O. #0002 – Hanger 245 |

93.     Moreover, representatives of Blackhawk have advised Travelers that (a) Blackhawk is financially unable to resolve the Blackhawk Claims and (b) Blackhawk will likely experience a multimillion dollar shortfall, which may prevent Blackhawk from completing its obligations under the contracts covered by the various Bonds naming Blackhawk and/or Blackhawk-Jamco SDVO as the principal obligor.

94.     Based upon Blackhawk's financial instability, Travelers anticipates that it will incur additional Loss as defined by the Indemnity Agreement relative to the Blackhawk Claims and the completion of the contracts covered by the Bonds naming Blackhawk and/or Blackhawk-Jamco SDVO as the principal obligor in excess of $2,000,000.

95.     Based upon the information it then had at its disposal, Travelers established an initial reserve of $2,000,000 relative to Travelers' Loss and anticipated Loss relative to the Blackhawk Claims

96.     By virtue of the Blackhawk Claims, the indemnity, collateral, and other obligations of the Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz have been triggered under the Indemnity Agreement.

97.     Travelers also has received claims under the Bonds naming MAPCO and Core principal obligors (collectively, the "Other Claims"), which further implicates the joint and several indemnity, collateral, and other obligations of the Unlimited Indemnity Indemnitors.

98.     As reflected by the Bonded Work in Progress, Travelers continues to face exposure to Loss relative to certain Bonds naming Jamco Ventures as the principal obligor, which implicates the joint and several indemnity, collateral, and other obligations of the Unlimited Indemnity Indemnitors and Joe Alex Muniz under the Indemnity Agreement.

99.     As reflected by the Bonded Work in Progress, Travelers continues to face exposure to Loss relative to certain Bonds naming CDI, MILCON Construction, Team JAMA, J&M Constructors, JAMA Constructors, and Jamco Group as the principal obligor, which implicates the joint and several indemnity, collateral, and other obligations of Unlimited Indemnity Indemnitors under the Indemnity Agreement.

**Travelers' Demands for Indemnity, Collateral, and Books/Records**

100.     By letter dated November 26, 2014, attached hereto as **Exhibit 6**, Travelers, among other things, requested a meeting with a number of the Indemnitors to discuss the status of the completion of the Bonded Work in Progress and several of the Blackhawk Claims.

101.     By letter dated December 10, 2014, attached hereto as **Exhibit 7**, Travelers, among other things, requested that a number of the Indemnitors (a) provide a proposal for resolving the Blackhawk Claims at no Loss to Travelers no later than December 31, 2014 and (b) provide free access to their and/or their companies' books and records as required by Paragraph 10 of the Indemnity Agreement.

102.     On January 15, 2015, Brian Taylor of Blackhawk presented Travelers with a cash flow analysis of Blackhawk that reflected a cash flow deficit of $2.8 million over the next few months.

103.     Given the lack of cooperation from the Indemnitors in providing a proposal for resolving the Blackhawk Claims and providing access to books and records, Travelers issued a formal demand on January 21, 2015 to the Indemnitors, attached hereto as **Exhibit 8**, that among other things, (a) advised a number of the Indemnitors that Travelers had established an initial reserve of $2,000,000 relative to the Blackhawk Claims, (b) requested that those Indemnitors deposit collateral with Travelers totaling $2,000,000 under Paragraph 5 of the Indemnity Agreement no later than January 31, 2015, (c) cautioned those Indemnitors against transferring, liquidating, or encumbering their "Property," (d) requested free access to their and/or their companies' books and records as required by Paragraph 10 of the Indemnity Agreement no later than January 31, 2015, and (e) advised those Indemnitors that Travelers would proceed to initiate a lawsuit against them if they failed to honor Travelers' requests.

104.     By letter dated February 2, 2015, attached hereto as **Exhibit 9**, Travelers, among other things, extended the deadline for the Indemnitors named as Defendants in this lawsuit to deposit collateral totaling $2,000,000 with Travelers as they are required to do under Paragraph 5 of the Indemnity Agreement until February 19, 2015.

105.     By letter dated February 5, 2015, attached hereto as **Exhibit 10**, Travelers, among other things, requested that the Indemnitors resolve a $38,436.10 claim asserted by Brandt Companies, LLC against one of the Bonds naming Blackhawk as the principal obligor, which Blackhawk appeared to acknowledge as a valid claim.

106.     By letter dated February 13, 2015[1], attached hereto as **Exhibit 11**, Travelers, among other things, (a) detailed the indemnity, collateral, and other obligations each of the Indemnitors named as a Defendant in this lawsuit owes to Travelers under the Indemnity Agreement, (b) again requested that the Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz deposit collateral totaling $2,000,000 relative to the Blackhawk Claims on or before February 19, 2015, and (c) requested each of the Indemnitors named as a Defendant in this lawsuit to (i) confirm that Travelers' investigative team will be granted access to the books, records, and other information Travelers has requested and (ii) advise when and where a meeting with Travelers' investigative team could be scheduled.

107.     Receiving no collateral security from Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, or Joe Alex Muniz by February 19, 2015 or access to the books and records of the Indemnitors by that same date, Travelers issued a final demand for

---

[1] Travelers sent the letter to the Indemnitors via electronic mail and/or regular mail on February 18, 2015, while inadvertently leaving the letter dated February 13, 2015.

the posting of collateral security and access to books and records in a letter dated March 6, 2015, attached hereto as **Exhibit 12**.

108.    Despite Travelers' demands, the Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz have failed to deposit any collateral with Travelers relative to the Blackhawk claims in violation of the Indemnity Agreement.

109.    Despite Travelers' demands, the Indemnitors named as Defendants in this lawsuit have also failed to furnish Travelers free access to their books and records in violation of the Indemnity Agreement.

110.    As of the date of this filing, the Indemnitors refuse to do anything to indemnify and hold Travelers harmless.    Because the Indemnitors refuse to (a) post collateral security to Travelers, (b) provide a plan of action for indemnifying Travelers, or (c) provide access to their books and records, Travelers will face imminent harm, irreparable injury, and will have no adequate remedy at law with respect to reimbursement for its loss under the Bonds.

111.    All conditions precedent to recovery by Travelers from the Indemnitors have occurred or have been performed.

## IV.    CLAIMS FOR RELIEF

### COUNT I

### Specific Performance of Collateral Obligations of the Unlimited Indemnity Indemnitors and the Blackhawk & MHB Ventures Indemnitors relative to the Blackhawk Claims

112.    Travelers hereby restates the averments contained in the foregoing Paragraphs of its Complaint for Indemnity, Equitable, and Other Relief as if fully set forth herein.

113.    Under Paragraph 5 of the Indemnity Agreement, the Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz are obligated to

deposit with Travelers an amount as determined by Travelers sufficient to discharge any Loss or anticipated Loss in relation to the Blackhawk Claims.

114.    In the Indemnity Agreement, the Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz acknowledged that Travelers shall be entitled to specific performance of their joint and several duty to deposit with Travelers an amount as determined by Travelers sufficient to discharge any Loss or anticipated Loss.

115.    To date, Travelers has established an initial reserve of $2,000,000 relative to the Blackhawk Claims.

116.    Pursuant to Paragraph 5 of the Indemnity Agreement, Travelers has demanded that the Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz deposit collateral totaling $2,000,000 relative to the Blackhawk Claims.

117.    Despite Travelers' demand, the Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz have failed to deposit any collateral with Travelers.

118.    The failure of the Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz to deposit the demanded collateral with Travelers constitutes a breach of Paragraph 5 of the Indemnity Agreement and constitutes a Default under the Indemnity Agreement.

119.    Travelers is therefore entitled to the entry of a judgment compelling the Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz to specifically perform their duty to deposit collateral with Travelers in the amount of $2,000,000, which is the amount Travelers has determined to be sufficient to discharge any Loss or anticipated Loss relative to the Blackhawk Claims.

## COUNT II

### Specific Performance of Duty to Furnish Access to Books and Records

120.    Travelers hereby restates the averments contained in the foregoing Paragraphs of its Complaint for Indemnity, Equitable, and Other Relief as if fully set forth herein.

121.    Under Paragraph 10 of the Indemnity Agreement, the Indemnitors, upon demand, are jointly and severally obligated to furnish Travelers free access to the records of the Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts, and electronically stored information, for the purpose of examining and copying them.

122.    Travelers has requested that the Indemnitors named as Defendants in this lawsuit furnish Travelers free access to their records, as they are required to do under Paragraph 10 of the Indemnity Agreement.

123.    Despite Travelers' requests, the Indemnitors named as Defendants in this lawsuit have failed to furnish Travelers free access to their records.

124.    The failure of the Indemnitors named as Defendants in this lawsuit to furnish Travelers free access to their records constitutes a breach of Paragraph 10 of the Indemnity Agreement and a Default under the Indemnity Agreement.

125.    Among other things, the failure of the Indemnitors named as Defendants in this lawsuit to furnish Travelers free access to their records has deprived Travelers of the ability to investigate the Property of the Indemnitors, the ability to investigate/exercise Travelers' various Remedies, and the ability to investigate/exercise the most effective means of minimizing Loss under the Bonds.

126.    As acknowledged in Paragraph 16 of the Indemnity Agreement, Travelers is entitled to specific performance of the terms of the Indemnity Agreement, including the terms of Paragraph 10.

127.    Travelers is therefore entitled to the entry of a judgment compelling the Indemnitors named as Defendants in this lawsuit to specifically perform their joint and several obligation to furnish Travelers free access to their records including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them.

## COUNT III

## Application for Temporary Restraining Order

128.    Travelers hereby restates the averments contained in the foregoing Paragraphs of its Complaint for Indemnity, Equitable, and Other Relief as if fully set forth herein.

129.    Travelers hereby applies for a Temporary Restraining Order (a) ordering the Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz to deposit immediately cash collateral in the amount of $2,000,000 with Travelers and (b) ordering the Indemnitors to provide the Surety immediate access to their books, records, accounts, databases, and other documents and information Travelers has a right to access under Paragraph 10 of the Indemnity Agreement (collectively, the "Records").  The injunctive relief is necessary to preserve the status quo and to prevent significant, imminent, and irreparable harm to Travelers, as Travelers will suffer such harm if it does receive the protection it has a right to receive under the Indemnity Agreement in the form of cash collateral.

130.    Travelers will also suffer immediate and irreparable injury if the Indemnitors are not immediately restrained from destroying and/or hiding the Records, and the Indemnitors have

a contractual obligation to provide access to the Records.  No harm will occur to the Indemnitors if this Court orders them to abide by their contractual obligation and provide reasonable access to Travelers.

131.    Travelers will likely prevail on the merits and has no adequate remedy at law. Injunctive relief will not adversely affect the public interest, and Travelers is willing to post a bond in the amount the Court deems appropriate.

## COUNT IV

### Contractual Indemnity Relative to the Blackhawk Claims

132.    Travelers hereby restates the averments contained in the foregoing Paragraphs of its Complaint for Indemnity, Equitable, and Other Relief as if fully set forth herein.

133.    Under Paragraph 3 of the Indemnity Agreement, the Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz are obligated to exonerate, indemnify, and save Travelers harmless from and against all Loss as defined by the Indemnity Agreement relative to the Blackhawk Claims.

134.    The Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz have failed to exonerate, indemnify, and save Travelers harmless from and against all Loss as defined by the Indemnity Agreement relative to the Blackhawk Claims.

135.    The failure of Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz to exonerate, indemnify, and save Travelers harmless from and against all Loss as defined by the Indemnity Agreement relative to the Blackhawk Claims constitutes a breach of Paragraph 3 of the Indemnity Agreement and a Default under the Indemnity Agreement.

136.    The breach of Paragraph 3 of the Indemnity Agreement by Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz has damaged Travelers in an amount in an amount likely to exceed $2,000,000 relative to the Blackhawk Claims.

137.    Travelers is therefore entitled to the entry of judgment against Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz in an amount sufficient to fully exonerate, indemnify, and save Travelers harmless from and against all Loss as defined by the Indemnity Agreement relative to the Blackhawk Claims, which amount will be proven at trial.

## COUNT V

### Contractual Indemnity Relative to the Other Claims

138.    Travelers hereby restates the averments contained in the foregoing Paragraphs of its Complaint for Indemnity, Equitable, and Other Relief as if fully set forth herein.

139.    Under Paragraph 3 of the Indemnity Agreement, the Unlimited Indemnity Indemnitors are jointly and severally obligated to exonerate, indemnify and save Travelers harmless from and against all Loss as defined by the Indemnity Agreement relative to the Other Claims.

140.    The Unlimited Indemnity Indemnitors have failed to exonerate, indemnify and save Travelers harmless from and against all Loss as defined by the Indemnity Agreement relative to the Other Claims.

141.    The failure of the Unlimited Indemnity Indemnitors to exonerate, indemnify and save Travelers harmless from and against all Loss as defined by the Indemnity Agreement relative to the Blackhawk Claims constitutes a breach of Paragraph 3 of the Indemnity Agreement and a Default under the Indemnity Agreement.

142.     The breach of Paragraph 3 of the Indemnity Agreement by the Unlimited Indemnity Indemnitors has damaged Travelers in an amount to be proven at trial.

143.     Travelers is therefore entitled to the entry of judgment against the Unlimited Indemnity Indemnitors, jointly and severally, in an amount sufficient to fully exonerate, indemnify, and save Travelers harmless from and against all Loss as defined by the Indemnity Agreement relative to the Other Claims, which amount will be proven at trial.

## COUNT VI

## Fraudulent Transfers

144.     Travelers hereby restates the averments contained in the foregoing Paragraphs of its Complaint for Indemnity, Equitable, and Other Relief as if fully set forth herein.

145.     As detailed herein, Travelers possesses a Claim against the Indemnitors named as Defendants in this lawsuit under the Indemnity Agreement for purposes of the Texas Uniform Fraudulent Transfer Act, Tex. Bus. & Com. Code Ann. § 24.001 *et seq.* (the "UFTA").

146.     As detailed herein, Travelers qualifies as a "Creditor" of the Indemnitors named as Defendants in this lawsuit under the UFTA.

147.     As detailed herein, the Indemnitors named as Defendants in this lawsuit have failed to furnish Travelers free access to their records, which has, *inter alia*, has deprived Travelers of the ability to investigate the Property of the "Indemnitors."

148.     To the extent one or more of the Indemnitors named as Defendants in this lawsuit may have transferred Property or incurred other obligations with the actual intent to hinder, delay, or defraud Travelers and/or other Creditors, such transfers/obligations are fraudulent as to Travelers under the UFTA.

149.    To the extent one or more of the Indemnitors named as Defendants in this lawsuit may have transferred Property or incurred other obligations without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the Indemnitor at issue (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction or (b) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due, such transfers/obligations to are fraudulent as to Travelers under the UFTA.

150.    To the extent one or more of the Indemnitors named as Defendants in this lawsuit may have transferred Property as defined by the Indemnity Agreement or incurred other obligations without receiving a reasonably equivalent value in exchange for the transfer or obligation and the Indemnitor was insolvent at that time or the Indemnitor became insolvent as a result of the transfer or obligation, such transfers/obligations are fraudulent as to Travelers under the UFTA.

151.    To the extent one or more of the Indemnitors named as Defendants in this lawsuit may have transferred Property as defined by the Indemnity Agreement or incurred other obligations to an "Insider" for an antecedent debt, the Indemnitor was insolvent at that time, and the "Insider" had reasonable cause to believe that the Indemnitor was insolvent, such transfers/obligations are fraudulent as to Travelers under the UFTA.

152.    Therefore, to the extent one or more of the Indemnitors named as Defendants in this lawsuit has fraudulently transferred Property or fraudulently incurred other obligations under the UFTA, Travelers is entitled to an injunction/judgment against one or more of the Indemnitors named as Defendants in this lawsuit and any transferees/obligees, *inter alia*, (a) avoiding the

transfers/obligations to the extent necessary to satisfy Travelers' Claim, (b) attaching or granting another provisional remedy against the Property transferred or other property of the transferee, (c) enjoining further disposition by the Indemnitors or a transferee, or both, of the asset transferred or of other property, and/or (d) appointing a receiver to take charge of the Property transferred or of other property of the transferees.

153.    Moreover, to the extent one or more of the Indemnitors named as Defendants in this lawsuit has fraudulently transferred Property as defined by the Indemnity Agreement or fraudulently incurred other obligations under the UFTA, Travelers is entitled to a judgment against one or more of them awarding Travelers its costs and reasonable attorneys' fees.

154.    Travelers also reserves the right to amend its Complaint for Indemnity, Equitable, and Other Relief to add any recipients of any Property fraudulently transferred under the UFTA.

WHEREFORE, PREMISES CONSIDERED, Travelers prays for the following relief:

a.    For the issuance of process requiring each Defendant to answer Travelers' Complaint for Indemnity, Equitable, and Other Relief;

b.    For the entry of a judgment compelling the Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz to specifically perform their obligation to deposit collateral with Travelers in the amount of $2,000,000, which is the amount as determined by Travelers sufficient to discharge any Loss or anticipated Loss;

c.    For the entry of a judgment compelling the Indemnitors named as Defendants in this lawsuit to specifically perform their duty to furnish Travelers free access to their records including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them;

d.    For entry of a temporary restraining order, preliminary injunction, and permanent injunction for the following relief:  (i) that the Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz be required to specifically perform their obligation to deposit cash collateral with Travelers in the minimum amount of $2,000,000; and (ii) that the Indemnitors provide Travelers with immediate access to the Records;

e.     For the entry of judgment against the Unlimited Indemnity Indemnitors, the Blackhawk & MHB Ventures Indemnitors, and Joe Alex Muniz in an amount sufficient to fully exonerate, indemnify, and save Travelers harmless from and against all Loss as defined by the Indemnity Agreement relative to the Blackhawk Claims, which amount will be proven at trial;

f.     For the entry of judgment against the Unlimited Indemnity Indemnitors, jointly and severally, in an amount sufficient to fully exonerate, indemnify, and save Travelers harmless from and against all Loss as defined by the Indemnity Agreement relative to the Other Claims, which amount will be proven at trial;

g.     For the entry of an injunction/judgment against one or more of the Indemnitors named as Defendants in this lawsuit and any transferees/obligees, *inter alia*, (i) avoiding any fraudulent transfers/obligations to the extent necessary to satisfy Travelers' "Claim," (ii) attaching or granting another provisional remedy against the Property fraudulently transferred or other property of the transferee, (iii) enjoining further disposition by the Indemnitors or a transferee, or both, of the asset fraudulently transferred or of other property, and/or (iv) appointing a receiver to take charge of the Property fraudulently transferred or of other property of the transferees; and

h.     For such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause including, but not limited to, pre-judgment and post-judgment interest.

Respectfully submitted,

**WEINSTEIN RADCLIFF LLP**

*/s/ Gregory M. Weinstein*
Gregory M. Weinstein
Texas State Bar No. 20196430
6688 North Central Expressway
Suite 675
Dallas, Texas 75206
Telephone:  214.865.6126
Facsimile:  214.865.6140
gweinstein@weinrad.com

***Attorneys for Travelers Casualty and Surety Company of America***