UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND | § | No. 5:15–CV–200–DAE |
| SURETY COMPANY OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| MICHAEL PADRON, MARIA | § | |
| PADRON, JOE ALEX MUNIZ, | § | |
| MICHAEL WIBRACHT, LAURA | § | |
| WIBRACHT, RUEBEN | § | |
| VILLARREAL, JAMES BRIAN | § | |
| TAYLOR, FAMEEDA TAYLOR, | § | |
| STEVEN WIBRACHT, ERIN | § | |
| WIBRACHT, RAYMOND JENKINS, | § | |
| WENDY JENKINS, MAPCO, INC., | § | |
| BLACKHAWK VENTURES, LLC, | § | |
| d/b/a BLACKHAWK | § | |
| CONSTRUCTORS, PROMASTERS | § | |
| CONSTRUCTION, INC., JAMCO | § | |
| VENTURES, LLC, HOMELAND | § | |
| CONSTRUCTION, INC., MBH | § | |
| VENTURES, LLC, MILCON | § | |
| CONSTRUCTION, LLC, TEAM | § | |
| JAMA, CORE LOGISTICS | § | |
| SERVICES, LLC d/b/a CORE | § | |
| CONSTRUCTORS, WPS GROUP, | § | |
| LLC, d/b/a FEDERAL | § | |
| MANAGEMENT SOLUTIONS, | § | |
| PADRON ENTERPRISES, INC., | § | |
| BLACKHAWK-JAMCO A SDVO, | § | |
| LLC, BLACKHAWK/JAMCO JV2, | § | |
| | § | |
| Defendants. | § | |

## ORDER (1) DENYING MOTION FOR STAY AND (2) DENYING MOTION FOR PRELIMINARY INJUNCTION

Before the Court is a Motion to Stay filed by Core Logistics Services, LLC, Michael Wibracht, Laura Wibracht, Steven Wichracht, and Erin Wibracht (collectively and hereinafter "Core Defendants").  (Dkt. # 117.)  Also before the Court is a Motion for Preliminary Injunction filed by Travelers Casualty and Surety Company of America ("Plaintiff" or "Travelers").  (Dkt. # 121.)  On March 11, 2016, the Court heard oral argument on both motions:  Gregory Weinstein, Esq. appeared on behalf of Plaintiffs; William Benesh, Esq. appeared on behalf of the Core Defendants; Lewin Plunkett, Esq appeared on behalf of Michael Padron, Rueben Villarreal, Manuela Villarreal, James Brian Taylor, Frameeda Taylor, Mapco, Inc., Blackhawk Ventures, LLC d/b/a Blackhawk Constructors, Promasters Construction, Inc., WPS Group, LLC, Padron Enterprises, Inc., Blackhawk-Jamco A SDVO, LLC, Blackhawk/Jamco JV2; Caleb Rackley, Esq. appeared on behalf of Milcon Construction, LLC; William Kingman, Esq. appeared on behalf of Jamco Ventures, LLC, Team Jama, and Joe Alex Muniz; Scott Noel, Esq. appeared on behalf of MBH Ventures, LLC; Bernie Martinez, Esq. on behalf of Maria Padron. The Court will refer to all defendants collectively as "Defendants" or "Indemnitors."

After careful consideration of the memoranda in support of and in opposition to the Motion, and in light of the parties' arguments at the hearing, the

2

Court, for the reasons that follow **DENIES** the Motion to Stay (Dkt. # 117) and

**DENIES** the Motion for Preliminary Injunction.  (Dkt. # 121.)

<u>BACKGROUND</u>

I.    <u>The Bonds</u>

Plaintiff is a surety company that issued performance, payment, and

surety bonds for projects undertaken by Defendants Blackhawk Ventures, LLC,

Blackhawk/Jamco SDVO , and Core Logistics Services, LLC, ("Bond Principals").

("Marino Aff. 2," Dkt. # 117 ¶ 2.)  In exchange for the bonds, all Defendants

executed an Indemnity Agreement (the "Indemnity Agreement") and riders to that

agreement with Plaintiff.  (Dkt. # 106, Exs. 1−5.)  The Agreement completely

indemnifies Plaintiff in the event of a loss and provides that:

> Indemnitors agree to deposit with [Plaintiff], upon demand, an amount
> as determined by [Plaintiff] sufficient to discharge any Loss or
> anticipated Loss.  Indemnitors further agree to deposit with [Plaintiff],
> upon demand, an amount equal to the value of any assets or Contract
> funds improperly diverted by any Indemnitor.  Sums deposited with
> [Plaintiff] pursuant to this paragraph may be used by [Plaintiff to pay
> such claim or be held by [Plaintiff] as collateral security against any
> Loss or unpaid premium on any Bond. . . . Indemnitors agree that
> [Plaintiff] would suffer irreparable damage and would not have an
> adequate remedy at law if Indemnitors fail to comply with the
> provisions of this paragraph.

("Indemnity Agreement," Dkt. # 106, Ex. ¶ 5.)  In 2014, Plaintiff began to receive

claims exceeding $5.5 million under certain bonds, naming Blackhawk and

Blackhawk/Jamco SDVO as the principal obligors (the "Blackhawk Bonds").
(Dkt. # 8, Ex. 1 ¶ 6; "First Am. Compl.," Dkt. # 106 ¶ 71.)

On November 26, 2014, Plaintiff sent a letter to Defendants, requesting their presence at a December 4, 2014 meeting to discuss the obligations of the Bond Principals, the financial status of certain Bond Principals, and the impact that the construction contracts and finances of the Bond Principals could have on Defendants as the indemnitors. (Dkt. # 106, Ex. 6; Dkt. # 8, Ex. 1 ¶ 10.) At this meeting, representatives of Blackhawk advised Travelers that it was financially unable to resolve the Blackhawk claims and would likely experience a multimillion dollar shortfall preventing it from meeting its obligations under the contracts covered by various bonds. ("Marino Aff. 1," Dkt. # 8-1 ¶ 7; Dkt. ## 106, Ex. 7−8.)

Following the meeting, Plaintiff sent Defendants a second letter reiterating that if Blackhawk's "cash flow issues" were not quickly addressed and Plaintiff was forced to pay claims on the bonds, it would need to exercise its rights against Defendants under the Indemnity Agreement. (Dkt. # 106, Ex. 7.) The letter indicated that the claims against the Blackhawk Bonds had exceeded $6 million; Plaintiff understood that certain claims should be reduced or resolved, lowering the open bond claims to approximately $2.4 million. (Id.) Plaintiff asked that Defendants provide a proposal showing that Blackhawk would have working

capital sufficient to cover the bond claims by December 31, 2014.  (Id.)  Plaintiff

also put Defendants on notice that it would be contacting them to discuss

procurement of books and records from the Bond Principals, pursuant to the books

and records provision of the Agreement.  (Id.)

   Defendants did provide a proposal by December 31, 2014, as Plaintiff

has requested.  (Dkt. # 8, Ex. 1 ¶ 13.)  On January 15, 2015, Brian Taylor of

Blackhawk presented Travelers with Blackhawk cash flow analysis that reflected a

deficit of $2.8 million over the next few months.  (First Am. Compl. ¶ 81.)

   Concerned by the financial obligations and financial stability of the

Bond Principals, Plaintiff issued a demand letter to Defendants on January 21,

2015, which demanded that Defendants deposit $2 million in collateral security on

or before January 31, 2015, pursuant to the Indemnity Agreement.  (First Am.

Compl. ¶ 82; Dkt. # 106, Ex. 8.)  Plaintiff also demanded that each Defendant

provide a contact person who would make its books and records available for

examination and copying on or before January 31, 2015.  (Dkt. # 106, Ex. 8.)

   On March 6, 2015, after Defendants' failure to comply with Plaintiff's

formal demand, Plaintiff issued a final letter to Defendants demanding that

Defendants post $2 million in collateral security and provide Plaintiff's

investigative team access to their books and records by March 16, 2015.  (Dkt.

# 106, Ex. 12.)

On March 17, 2015, Plaintiff filed the instant lawsuit against

Defendants, seeking (1) specific performance of Defendants' obligations under the

Indemnity Agreement to provide collateral security in the amount of $2 million, (2)

access to books and records, (3) contractual indemnity to claims under the

Indemnity Agreement, and (4) an injunction against any Defendant that had

fraudulently transferred property as defined under the Indemnity Agreement.  (Dkt.

# 1.)  The complaint also contained an Application for Temporary Restraining

Order (id. at 29–30), which Plaintiff supplemented with a memorandum on March

27, 2015 (Dkt. # 8).

II.     The State Court Proceeding

On February 18, 2015, approximately one month before Travelers

filed the instant lawsuit in this Court, Pavecon, Ltd. ("Pavecon) filed a lawsuit

against Core Logistics Services, LLC d/b/a Core Constructors ("Core") and

Travelers in the 81st Judicial District Court of La Salle County, Texas.[1]  ("State

Pet.," Dkt. # 117-1.)  Core Logistics is one of the Defendants/Indemnitors sued by

Travelers in the instant federal action.

In the state court petition, Pavecon alleges that in January 2014, it

provided Core materials and labor for cement stabilizations of Cameron Lane in La

---

[1] Pavecon, Ltd. v. Core Logistic Services, LLC d/b/a Core Constructors, and
Travelers Casualty and Surety Company of America, No. 15-02-00023-CV (81st
Dist. Ct. La Salle County, Tex. Feb. 18, 2015).

Salle County.  (Id. ¶ 3.)  Pavecon alleges that Core owes it $301,001.48, but has failed to pay the amount due.  (Id. ¶ 5.)  Pavecon also alleges that Core and Travelers executed a surety bond (the "Core Bond") under which terms Travelers undertook an obligation to pay for all labor and materials for the Cameron Lane project, and that Travelers has failed to pay the amount due.  (Id. ¶ 9.)  This state court action is the "claim" against the Core Bond that forms one of the bases for Travelers current lawsuit in federal court.  The other bases are the "claims" against the Blackhawk Bonds.

### III.   Subsequent History Following this Court's May 1, 2015 Order

On May 1, 2015, this Court issued an order granting in part and denying in part Travelers' Motion for a Preliminary Injunction.[2]  (Dkt. # 49.)  The Court granted Plaintiff's request that Defendants "provide their records, including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, to Plaintiff for the purpose of examining and copying them, within thirty (30) days of the issuance of this order."  (Id. at 27.)  The Court denied without prejudice Plaintiff's motion seeking a mandatory injunction requiring Defendants post $2 million in collateral security on the ground that Plaintiff failed to demonstrate the existence of an irreparable harm.  (Id.)

---

[2] The Court converted the application for a TRO into a Motion for Preliminary Injunction.

On May 14, 2015, Travelers sent a letter to Defendants to coordinate the production of the relevant business documents.  (Dkt. # 106, Ex. 13.) Consistent with this Court's Order, most Defendants[3] began to provide the requested books and records and to meet with Travelers' independent accountants and consultants who were hired to determine Defendants' financial ability to complete their bonded work in progress, to resolve open bond claims, and to indemnify Travelers in full from any loss under those bonds.  (Marino Aff. 2, ¶¶ 4−5; First Am. Compl. ¶¶ 90−91.)  Defendants produced financial and project information as recently as October 2015 that provided internal information through March 31, 2015.  (Marino Aff. 2 ¶ 5; First Am. Compl. ¶ 91.)

On October 29, 2015, Travelers sent another demand letter to Plaintiffs seeking collateral.  (Dkt. # 106, Ex. 14.; First Am. Compl. ¶ 92.)  This time, however, Travelers demanded Defendants post collateral in the amount of $3.4 million based on Travelers' new estimate of anticipated losses under the Blackhawk and Core bonds whose claims exceeded $9 million.  (Dkt. # 106, Ex. 14.; First Am. Compl. ¶¶ 88, 92.)

On November 9−10, 2015, Travelers and Defendants conducted a formal mediation with the goal of reaching an agreement on the collateral demand, but were unsuccessful.  (Marino Aff. 2, ¶ 9; First. Am. Compl. ¶¶ 93−94.)

---

[3] Defendants Raymond Jenkins, Wendy Jenkins, and Homeland Construction, Inc., have not entered an appearance in this matter.

On November 30, 2015, Travelers filed its First Amended Complaint against Defendants seeking the following: (1) specific performance of collateral obligations for claims against the Blackhawk and Core Bonds; (2) specific performance that Defendants produce their books and records to reflect activity before and after March 31, 2015; (3) a temporary restraining order requiring Defendants to post collateral and produce the relevant records; (4) contractual indemnity relative to the Blackhawk Claims; (5) contractual indemnity relative to the other claims (the claim on the Core Bond)[4]; and (5) an injunction or judgment against Defendants for fraudulent transfers of property.  (First Am. Compl. ¶¶ 96−138).

In the amended complaint, Travelers alleges that it faces open payment and performance bond claims in excess of $7.5 million. (Marino Aff. ¶ 6.)  Specifically, in a sworn affidavit a Travelers officer states that he is aware of thirteen claims against bonded work projects in progress: three claims for payment arising out of  JAMCO Venture's projects on Fort Polk, a claim by Pavecon for payment arising out of Core's road improvement project in La Salle County[5], three claims for payment arising out of Blackhawk-Jamco's project at an Army Reserve

---

[4] The only "other claim" factually present in Plaintiff's amended complaint is Pavecon's state court lawsuit against Core Logistics and Travelers seeking $301,001.48 in payment for services rendered as a subcontractor.

[5] This claim on the payment bond is the basis of the state court lawsuit relevant to the Core Defendants' Motion to Stay.

Center, five claims for payment arising out of Blackhawk Ventures' project at a Veterans Affairs Medical Center, and a claim for payment arising out a Jamco Ventures' project to renovate a building.  (Marino Aff. ¶ 6.)

On January 11, 2016, the Core Defendants, who are co-defendants with Travelers in the state court action against Pavecon, filed a Motion to Stay the federal lawsuit until resolution of the state court action.  (Dkt. # 117.)  Specifically, the Core Defendants seek a stay of Travelers claims against it for specific performance to post collateral security for anticipated losses under the Core Bond and for contractual indemnity for actual losses until the resolution of the state court action.

The next day, January 12, 2016, Travelers filed a Motion for Preliminary Injunction seeking: (1) an order that Defendants pay Travelers or pay into the registry of the Court $3.4 million, representing the amount "sufficient to discharge any Loss or anticipated Loss" (Indemnity Agreement ¶ 5); and (2) an order that Defendants provide their books and records for before and after March 31, 2015.  (Dkt. # 121 at 4.)

DISCUSSION

I.    <u>Motion to Stay</u>

Prior to addressing Plaintiffs' Motion for a Preliminary Injunction, the Court must determine whether to stay Plaintiff's two claims that seek (1) collateral

10

security for anticipated losses and (2) contractual indemnity for actual losses, both of which arise under the Pavecon claim currently being litigated in state court.

The Core Defendants argue that the Court should stay all of Plaintiff's claims that seek: (1) the posting of cash collateral security for anticipated losses arising out of the Pavecon claim in state court against the Core Bond; and (2) contractual indemnity for actual losses that arise out of the Core Bond, until the state court determines on the merits the amount, if any, of actual losses associated with the Core Bond.  (Dkt. # 117 at 10.)

Plaintiff agrees that the Court should refrain from adjudicating the merits of the actual loss incurred against Travelers arising out of the Pavecon claim because the state court is resolving the issue of actual loss.  ("Pl. Response," Dkt. # 135 at 4−5.)  However, Plaintiff disagrees with Core's contention that the Court should stay Plaintiff's claim seeking collateral security for anticipated losses from Core's alleged failure to pay Pavecon.  (Id. at 5.)

A. Abstention Analysis

"Abstention from the exercise of federal jurisdiction is the exception, not the rule."  Colorado River Water Conservation District v. United States, 424 U.S. 800, 813 (1976).  Indeed, the circumstances in which a District Court "may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to [its duty] to adjudicate a controversy properly before it."

Id.  The decision to abstain where jurisdiction is present is reserved for "extraordinary circumstances" in which abstention "would clearly serve an important countervailing interest."  Id.

Abstention is appropriate where a state court's resolution of a state law issue might moot a federal constitutional question.  See Railroad Comm'n of Tex. v. Pullman Co., 312 U.S. 496, 501 (1941).  Abstention is also appropriate where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the case then at bar.  See generally  La. Power & Light Co. v. Thibodeaux, 360 U.S. 25 (1959).  Abstention is likewise appropriate where a party invokes federal jurisdiction to enjoin a state criminal proceeding brought in good faith.  See generally Younger v. Harris, 401 U.S. 37 (1971).  These doctrines rest on principles of federalism and are not applicable here.

Abstention may still be appropriate based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation."  Colorado River, 424 U.S. at 817 (internal citations omitted).  Where this is the case, if a federal lawsuit seeks monetary or other relief, except a declaration of rights, the district court's discretion to stay is governed by the standard announced in Colorado River and its progeny.  424 U.S. at 817−19; Amer. Guarantee & Liab. Ins. Co. v. Anco Insulations, Inc., 408 F.3d

248, 250−51 (5th Cir. 2005).  Here, Travelers does not seek declaratory judgment, but instead seeks monetary relief in the form of a mandatory injunction to post collateral security and for Defendants to indemnify Plaintiff for actual losses arising under the Indemnity Agreement.  (First Am. Compl. ¶¶ 96−103, 122−27.)  Accordingly, the appropriate framework to determine whether to stay Plaintiff's claims against Core Defendants is the <u>Colorado River</u> doctrine.

   A condition precedent to the application of <u>Colorado River</u> abstention is the existence of a parallel state court action involving the same parties and the same issues.  <u>Stewart v. Western Heritage Ins. Co.</u>, 438 F.3d 488, 491 (5th Cir. 2006).  If this condition is met, "a district court may abstain from a case only under 'exceptional circumstances.'"  <u>Id.</u>  In deciding whether "exceptional circumstances" exist, the District Court is to consider six factors: (1) assumption by either court of jurisdiction over a res; (2) relative inconvenience of the forums;  (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) to what extent federal law provides the rules of decision on the merits; and (6) the adequacy of the state proceedings in protecting the rights of the party invoking federal jurisdiction.  <u>Black Sea Inv., Ltd v. United Heritage Corp.</u>, 204 F.3d 647, 650 (5th Cir. 2000).  Whether to abstain requires a "careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."  <u>Moses H. Cone</u>

Memorial Hosp. v. Mecury Constr. Corp., 460 U.S. 1, 16 (1983).  Further, "when a

district court decides to dismiss or stay under Colorado River, it presumably

concludes that the parallel state-court litigation will be an adequate vehicle for the

complete and prompt resolution of the issues between the parties."  Id. at 28.

                1)  Parallel State Proceeding

        State and federal actions are parallel when they involve "the same

parties and the same issues."  RepublicBank Dallas Nat. Ass'n v. McIntosh, 828

F.2d 1120, 1121 (5th Cir. 1987).  The Fifth Circuit recognizes some flexibility in

the parallelism requirement by noting "there need not be applied in every instance

a mincing insistence on precise identity" of the parties and issues.  Id.; see also

Wright v. Spindletop Films, L.L.C., 845 F. Supp. 2d 783, 788 (S.D. Tex.

2012).  While a flexible standard, there should be a "substantial likelihood that the

state litigation will dispose of all claims presented in the federal case."  Clark v.

Lacy, 376 F.3d 682, 686 (7th Cir. 2004); FinServ Cas. Corp. v. Settlement

Funding, LLC, 724 F. Supp. 2d 662, 679 (S.D. Tex. 2010) ("The central inquiry is

whether there is a substantial likelihood that the state litigation will dispose of all

claims presented in the federal case.").

        In the relevant state court proceeding, Pavecon, a subcontractor on a

road improvement project sued Core, the general contractor, for an amount Core

owed Pavecon for allegedly performing cement work on Cameron Lane in La Salle

County, Texas.  (Dkt. # 117 ¶ 3; State Pet. ¶ 3.)  Pavecon joined Travelers as a co-defendant in the state court action because Travelers was the surety on the Core Bond.  (Dkt. # 117 ¶ 3.)  Travelers does not dispute that it is the surety on the payment bond for the Cameron Lane project.  (First Am. Compl. ¶ 88.)  Thus, the primary issues in the state court action are Pavecon's right of payment arising out of the contract between Pavecon and Core, and Travelers' liability on the Core Bond as the surety.

The instant federal court proceeding arises out of Travelers rights under the Indemnity Agreement which Defendants in this lawsuit entered into to secure surety bonds for their construction projects.  Specifically, Travelers seeks to secure its rights under the Indemnity Agreement to collect (1) collateral security for anticipated losses and (2) indemnification of actual losses incurred under the Blackhawk Bonds and the Core Bond.  (Dkt. # 135 ¶ 7.)

The two lawsuits are parallel in the sense that Travelers and Core are parties in both state and federal proceedings, albeit in different postures.  The issues presented in the state and federal forums, however, are not as obviously parallel.  Indeed, the parallel features of the state court claim must be analyzed separately as to two of Travelers' claims in this case.

i.     Travelers' Claim Seeking Collateral Security for Anticipated Losses

The state court case focuses on whether Pavecon has a right to payment under its contract with Core and whether Travelers is liable for that payment as the surety of the Core Bond.  This state court lawsuit is one of the anticipated losses[6] for which Travelers seeks collateral security under the Indemnity Agreement in the federal forum.  The mere existence of the state court lawsuit, and not the substance or merits of the state court litigation, is what gives rise to Travelers' claim in this Court seeking collateral security.  The possibility of loss under the Core Bond in the state court suit is the anticipated loss that Travelers alleges gives it the right to demand collateral security under the Indemnity Agreement.  Thus, the state court case is not parallel, but merely a but-for cause of Travelers' cause of action in the federal forum seeking collateral security for anticipated loss under the Core Bond.  Accordingly, the Court finds that the state court proceeding is not parallel in this respect.

ii.     Travelers' Claim Seeking Contractual Indemnity for Actual Losses

The result of the Pavecon lawsuit in state court will directly affect whether Travelers suffers an actual loss under the Core Bond.  If the state court

---

[6] In addition to the anticipated loss under the Core Bond due to the Pavecon state court lawsuit, Travelers also anticipates alleged losses under the Blackhawk Bonds.

finds in favor of Pavecon on the merits and finds Travelers liable as the surety on the Core Bond, Travelers will suffer an actual loss.  Thus, Travelers would presumably be able to secure a judgment against Defendants in this Court for indemnity for actual losses on the Core Bond, as is Travelers' alleged right under the Indemnity Agreement.  Conversely, this Court would have to reach the merits of Pavecon's contractual claim against Core to determine whether Travelers suffers an actual loss under the Core Bond—the very claim that the state court is currently considering.  Thus, the state court case is similar to the instant federal lawsuit in that its resolution will affect Traveler's cause of action for contractual indemnity for actual losses under the Core Bond.

However, the state court action is not parallel to the entire instant federal case, because the state court action does not address the instant parties' rights and obligations under the Indemnity Agreement, does not involve any of the other twenty-two federal defendants, and will not dispose of the claims involving the Blackhawk Bonds that make up the majority of Travelers' causes of action in the federal lawsuit.  Thus, there is no likelihood that the state litigation will dispose of all claims presented in this federal lawsuit.  FinServ, 724 F. Supp. 2d at 679 ("The central inquiry is whether there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.").  Accordingly, the Court finds that the state court lawsuit and the federal lawsuit are not parallel

because the state court action focuses on a single issue that may or may not affect

Traveler's contractual rights for a single cause of action.  See Day, 862 F.2d at 656

("Suits are 'parallel' when substantially the same parties are contemporaneously

litigating substantially the same issues in another forum.").

        Granting a stay of the case under Colorado River is inappropriate

since the cases are not parallel.

II.   Preliminary Injunction

A. Legal Standard

        To obtain a preliminary injunction, a plaintiff must demonstrate:

> (1) a substantial likelihood of success on the merits, (2) a substantial
> threat of irreparable injury if the injunction is not granted, (3) that the
> threatened injury if the injunction is denied outweighs any harm that
> will result if the injunction is granted, and (4) that the grant of an
> injunction will not disserve the public interest.

Janvey v. Alguire, 647 F.3d 585, 595 (5th Cir. 2011); Byrum v. Landreth, 566 F.3d

442, 446 (5th Cir. 2009).  Injunctive relief "should only be granted when the

movant has clearly carried the burden of persuasion" on all four requirements.

Anderson v. Jackson, 556 F.3d 351, 360 (5th Cir. 2009) (citing Holland Am. Ins.

Co. v. Succession of Roy, 777 F.2d 992, 997 (5th Cir. 1985)); Dennis Melancon,

Inc. v. City of New Orleans, 703 F.3d 262, 268 (5th Cir. 2012).  "A preliminary

injunction is an extraordinary remedy never awarded as of right," and "courts must

balance the competing claims of injury and must consider the effect on each party

of the granting or withholding of the requested relief." <u>Winter v. Natural Res. Def.</u> <u>Council, Inc.</u>, 555 U.S. 7, 24 (2008) (quoting <u>Amoco Prod. Co. v. Village of</u> <u>Gambell, AK</u>, 480 U.S. 531, 542 (1987)).

"The purpose of a preliminary injunction is to preserve the status quo and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits." <u>Exhibitors Poster Exch., Inc. v. Nat'l</u> <u>Screen Serv. Corp.</u>, 441 F.2d 560, 561 (5th Cir. 1971). A request seeking mandatory relief as opposed to seeking the maintenance of the status quo "is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." <u>Roark v. Individuals of Fed. Bur. of Prisons, Former and</u> <u>Current</u>, 558 F. App'x 471, 471 (5th Cir. 2014) (quoting <u>Martinez v. Matthews</u>, 544 F.2d 1233, 1243 (5th Cir. 1976)).

B. <u>Request for Access to Books and Records</u>

On May 1, 2015, this Court issued an Order requiring Defendants to produce their relevant books and records. (Dkt. # 49.) Plaintiff contends that to date and pursuant to this Court's May 1 Order, Defendants have produced books and records that depict a financial picture up to March 31, 2015. (Marino Aff. 2 ¶ 5.) Plaintiff now seeks a second court order requiring Defendants to produce books and records before <u>and after</u> March 31, 2015. (Dkt. # 121 at 4.) The Court finds that its May 1, 2015 Order sufficiently places Defendants under an

affirmative and ongoing duty to produce such books and records regardless of dates.  Accordingly, the Court finds Plaintiff's Motion for a Preliminary Injunction to produce books and records is **MOOT**.

      C.  Request for $3.4 Million Collateral Security

            Plaintiff moves the Court to order Defendants to deposit $3.4 million in collateral security, either directly to Plaintiff, or in the Court's registry, so as to discharge any loss or anticipated loss on the pending bond claims.  (Dkt. # 121 at 4.)  On May 1, 2015, this Court issued an Order that denied Plaintiff's similar request that Defendants provide $2 million in collateral security.  (Dkt. # 49.)  In that Order, the Court denied issuing a mandatory injunction that would require Defendants post $2 million in collateral security because Plaintiff failed to produce evidence of irreparable harm.  (Dkt. # 49 at 25−26.)

            In that Order, the Court made two critical findings.  First, the Court noted "[w]hile it is true . . . that Plaintiff does not have an adequate remedy at law for the breach of the [Indemnity] Agreement's collateral security provision, the harm is not irreparable: Plaintiff can recover the collateral through final relief of specific performance."  (Dkt. # 49 at 24−25) (citing Dennis Melancon, Inc. v. City of New Orleans, 703 F.3d 262, 279 (5th Cir. 2012) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the

ordinary course of litigation, weighs heavily against a claim of irreparable

harm.")).  Second, the Court found:

> Nor is there any other indication that the harm is irreparable.  The law
> is clear that "[s]peculative injury is not sufficient [to show irreparable
> harm]; there must be more than an unfounded fear on the part of the
> applicant.  Thus, a preliminary injunction will not be issued simply to
> prevent the possibility of some remote future injury.  <u>A presently
> existing actual threat must be shown</u>."  <u>United States v. Emerson</u>, 270
> F.3d 203, 262 (5th Cir. 2001) (internal quotation marks omitted)
> (emphasis in original).  Although Plaintiff claims that the current bond
> claims are evidence that Defendants will not be able to satisfy a
> judgment if one is issued, it argues in the same breath that it does not
> know the financial health of Defendants because it has, to date, been
> unable to access their books and records . . . While there is a close
> question here as to whether the injury is unduly speculative, given the
> heightened burden that Plaintiff must face in securing a mandatory
> injunction, the Court concludes that there is insufficient evidence of
> irreparable harm

(Dkt. # 49 at 25–26.)

Here, the Court finds that Plaintiff has not yet fulfilled its heightened

burden to show irreparable harm, although it does find that Plaintiff has created a

serious question whether Defendants are capable of fulfilling their obligations

under the Indemnity Agreement.  For example, at the hearing Plaintiff submitted

evidence of pending claims against Travelers worth more than $8 million arising

out of Defendants' bonded work.  In addition, Plaintiff submitted to the Court a

financial analysis produced after their investigation of Defendants' books and

records that shows a purported loss of over $3.4 million.  Further, both sides

admitted at the hearing that the outcome of arbitration and litigation on other bond

claims will impact Defendants' ability to fulfill their obligations under the
Indemnity Agreement.  At the moment the Court finds that this information is
insufficient to demonstrate irreparable harm because Plaintiff provides no
evidentiary support by affidavit, sworn declaration, or authenticated business
records that Defendants' financial situation is a <u>presently existing actual threat</u> to
their ability to fulfill their obligations under the Indemnity Agreement.   Without
such evidence from Plaintiff of irreparable harm, the Court cannot find, in light of
the heightened standard necessary to issue a mandatory injunction, an actual
existing threat that would lead to irreparable harm.

However, the Court does find that because a serious question exists
about whether Defendants have the financial ability to satisfy their obligations
under the bonds and Indemnity Agreement, the Court will order each Defendant to
produce a complete and truthful accounting of their financials no later than May 1,
2016, that captures each individual Defendant's financial strength as of April 1,
2016.  The accounting shall distinguish between encumbered and pledged assets
versus assets available to satisfy the indemnity obligations which are the subject of
this lawsuit.

CONCLUSION

For the foregoing reasons, the Court (1) **DENIES** the Core Defendants' Motion to Stay (Dkt. # 117) and **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Preliminary Injunction (Dkt. # 121).

**IT IS FURTHER ORDERED** that each individual Defendant shall submit to Travelers' counsel a complete and truthful accounting of their financial strength no later than May 1, 2016.  The financial accounting shall capture each Defendant's books as of April 1, 2016 as detailed above.  Upon inspection of these records, if Travelers chooses to seek preliminary injunctive relief in the form of posting collateral security, Traveler's shall file **UNDER SEAL** its evidentiary proof in support of their motion that contains Defendants' financial information to protect it from public dissemination and to restrict access to such information to the Court alone.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, March 14, 2016.

_____
DAVID ALAN EZRA
UNITED STATES DISTRICT JUDGE