THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CAUSE NO.: 5:15-CV-200-DAE ) |
| MICHAEL PADRON, et al. | ) ) |
| Defendants. | ) ) |

**EMERGENCY MOTION FOR CONTEMPT
AND RELATED RELIEF UNDER FED. R. CIV. P. 64**

Plaintiff, Travelers Casualty and Surety Company of America ("Travelers") pursuant to 18 U.S.C. § 401, files this Motion for Contempt and Related Relief Under Fed. R. Civ. P. 64 ("Motion") against Defendants Michael A. Padron ("Padron"), MAPCO, Inc. ("MAPCO"), and Padron Enterprises, Inc. ("Padron Enterprises," collectively, the "Contempt Defendants"), and states:

### I.   SUMMARY

1.   Travelers has learned that Michael Padron is actively transferring significant and important assets of MAPCO and Padron Enterprises to his personal creditors in order to reduce his personal exposure to another creditor.  Padron's actions cut away at Travelers's means to recover in this instant action and directly violate this Court's injunction Order (defined below). By this Motion, Travelers seeks an order finding Padron, MAPCO, and Padron Enterprises in contempt of this Court's order made from the bench on July 31, 2017 in open court, and entered on the docket on August 2, 2017 (the "Order") (Dkt. 186).  Specifically, the Court ruled that Defendants "**shall not dissipate, dissolve, or transfer assets, and there shall be no change in

**Defendants' financial circumstances, other than what is required by the regular course of business, unless and until the Court orders otherwise.**" (*See* Dkt. 186, at 1 (emphasis added).)

2. On August 16, 2017, Travelers was served with a copy of the "Motion to Approve Receiver Transactions, Authorize Conveyance of Real Property into Receivership, Distribute Initial Funds and List Real Property for Sale" (the "Receiver's Motion to Distribute Property").[1] (*See* Ex. A, ¶ 3, Ex. A-1.) The Receiver's Motion to Distribute Property was filed on or about August 11, 2017, in the District Court for the 438th Judicial District, Bexar County, Texas (the "State Court") in the case styled as *Mutual of Omaha Bank v. Michael Angelo Padron*, case number 2016-CI-06590 (the "State Court Litigation"). (*See* Ex. A, ¶ 3, Ex. A-1, at 4.) A hearing to approve the Receiver's Motion to Distribute Property is scheduled for next Thursday, August, 24, 2017.

3. Based upon the averments in the Receiver's Motion to Distribute Property, it appears that on or about October 14, 2016, Mutual Bank of Omaha obtained a judgment against Michael A. Padron in the amount of $171,874.42, plus attorney's fees (the "Mutual of Omaha Judgment"). (*See* Ex. A, ¶ 3, Ex. A-1, at 1, ¶ 2.) The turnover receiver (the "Receiver") was appointed in the State Litigation on or about July 14, 2017. (*Id.*) It is important to note that Michael A. Padron is the only judgment debtor subject to the Mutual of Omaha Judgment.

4. As explained in the timeline of events detailed below, the Receiver's Motion to Distribute Property reveals that days after the Court entered the Order, Padron began the process

---

[1] Attached hereto and incorporated herein as "Exhibit A" true and correct copy of the Affidavit of Christine T. Alexander (hereafter "Alexander Aff.") submitted in support of this Motion. Attached to the Alexander Aff. as "Exhibit A-1" is a true and correct copy of the Receiver's Motion to Distribute Property and Notice of Service of Process of the Receiver's Motion to Distribute Property.

of conveying the assets of Padron Enterprises and MAPCO to the Receiver in an effort to satisfy the Mutual of Omaha Judgment against himself, Michael A. Padron.

5. The MAPCO assets Padron intends to convey are $50,000 in cash payment over five (5) months. (*See* Ex. A, ¶ 3, Ex. A-1.) The Padron Enterprises assets Padron intends to covey are: (i) unimproved real property belonging to Padron Enterprises and located at 2634 SW 34th Street, San Antonio, Texas (the "34th Street Property") via special warranty deed; (ii) Padron Enterprises' funds held in bank accounts at BBVA Compass Bank; and (iii) all funds received by Padron Enterprises commencing from the State Court's approval of the Receiver's Motion to Distribute Property, until Mutual Bank of Omaha receives its $50,000 payment over five (5) months. (*See* Ex. A, ¶ 3, Ex. A-1.)

6. The timeline shows Padron's deliberate actions to dissipate assets that are subject to this Court's Order:

| **Timeline of Events Giving Rise to this Motion** | |
|---|---|
| July 31, 2017 | Court holds hearing on Travelers's Third Motion for Preliminary Injunction. Court **grants** Travelers's Third Motion for Preliminary Injunction and issues an oral injunction. **Padron is in the courtroom and hears the Court's ruling.** |
| August 2, 2017 | The Court enters the Order prohibiting non-ordinary course expenditures and transfers of assets. (*See* Dkt. 186.)<br><br>The Court also enters its order "remind[ing] the parties that Defendants' obligations to produce books and records under an ongoing affirmative duty to so disclose, regardless of dates, **remains in full force and effect**." (*See* Dkt. 187 at 37 (the "Second Order") (emphasis added).) |
| August 3, 2017 | Travelers, through counsel, e-mails and mails a demand to Padron, MAPCO, and Padron Enterprises requesting, within 7 days of the letter, copies of all bank statements for the past six months.[2] |
| August 4, 2017 | Padron signs a settlement agreement promising: |

---

[2] A true and correct copy of the August 3, 2017, letters to counsel for Michael A. Padron, Padron Enterprises, Inc., and MAPCO, Inc., and the corresponding transmittal e-mail are attached hereto and incorporated herein as Exhibit "B".

|  | (i) to convey the Receiver the 34th Street Property; |
|---|---|
|  | (ii) to pay funds totaling $7,183.25 at four (4) BBVA Compass Bank in the name of Padron Enterprises and Padron to the Receiver; and |
|  | (iii) to pay $50,000 via cashier's check to the Receiver by August 10, 2017, and to provide monthly payments totaling an additional $50,000 to the Receiver thereafter. (*See* Ex. A, ¶ 3, Ex. A-1, ¶ 4, Ex. 1 (Settlement Agreement).) |
| August 7, 2017 | As a precaution, Travelers has the Court's Order personally served on Padron[3] and Padron Enterprises.[4] |
|  | Counsel for Padron, Padron Enterprises, and MAPCO, e-mails Travelers's counsel to say that the Defendants cannot comply with the request for the bank statements.[5] |
| August 8, 2017 | Counsel for Travelers responds to the August 7 E-mail reiterating the simplicity of the request for bank statements within 7 days as copies of the same should be accessible online.[6] |
| August 9, 2017 | Padron delivers a $50,000 cashier's check and special warranty deed conveying property known as the 34th Street Property that is owned by Padron Enterprises. (*See* Ex. A, ¶ 3, Ex. A-1, at 1, ¶¶ 3-4, Exs. 1, 2.) |
| August 11, 2017 | The Receiver's Motion to Distribute Property is filed. (*See id.*) |
| August 16, 2017 | Travelers is served with a copy of the Receiver's Motion to Distribute Property. |
| August 24, 2017 | The State Court has scheduled a hearing to approve the Receiver's Motion to Distribute Property. |

7. The actions of Padron, Padron Enterprises, and MAPCO are in direct violation of this Court's oral ruling on July 31, 2017, and the written Order confirming the same. Consequently, Travelers seeks this emergency relief in advance of the State Court's August 24, 2017, hearing to prevent Padron from completing the transfer of Padron Enterprises' and MAPCO's assets to satisfy the Mutual Bank of Omaha Judgment against himself, Padron.

---

[3] A true and correct copy of the Affidavit of Service for Padron is attached hereto and incorporated herein as Exhibit "C."

[4] A true and correct copy of the Affidavit of Service for Padron Enterprises is attached hereto and incorporated herein as Exhibit "D".

[5] A true and correct copy of the August 7, 2017, e-mail from Scott Noel, Defendants' counsel, to Jennifer L. Kneeland, Travelers's counsel, is attached hereto and incorporated herein as Exhibit "E."

[6] A true and correct copy of the August 8, 2017, correspondence from Jennifer L. Kneeland, Travelers's counsel, to Scott Noel, Defendants' counsel is attached hereto and incorporated herein as Exhibit "F."

## II.     ARGUMENT

### A. The Court's Authority to Hold Padron, MAPCO, and Padron Enterprises in Civil Contempt.

8.     Pursuant to 18 U.S.C. § 401, this Court has the "power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other as – … (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 18 U.S.C. § 401 (the "Contempt Statute"). Furthermore, beyond the power granted it by the Contempt Statute, the Court also has inherent contempt power in order to "promote[] the due and orderly administration of justice and safeguard[] [it]'s authority". *Seven Arts Filmed Entertainment Ltd. v. Jonesfilm*, 538 Fed. Appx. 444, 446 (5th Cir. 2013) (internal citations omitted); *see also Waffenschmidt v. MacKay*, 763 F.2d 711, 716 (5th Cir. 1985) ("[c]ourts possess the inherent authority to enforce their own injunctive decrees"). By conveying and attempting to convey assets outside of the ordinary course of business, Padron, MAPCO, and Padron Enterprises have disobeyed this Court's orders, and as such, are in violation of Section 401(3). As such, the Court is within its statutory and inherent authority to find Padron, MAPCO, and Padron Enterprises in civil contempt.

### B. Travelers Has Met its Burden to Show that Padron, Padron Enterprises, and MAPCO are in Civil Contempt.

9.     "A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Securities and Exchange Commission v. First Financial Group of Texas, Inc.*, 659 F.2d 660, 669 (5th Cir. 1981). Thus, to succeed on its Motion, Travelers must show that the Contempt Defendants (1) violated a definite and specific order of the Court that required them to perform or refrain from performing such act or acts; and (2) they did so with knowledge of the Court's Order. *See id.* As discussed more fully herein, Travelers has met its burden.

10. Addressing the second element first – knowledge of this Court's Order – it is very evident that the Contempt Defendants had knowledge of the Court's Order prohibiting them from dissipating, dissolving, or transferring any of their assets outside of the ordinary course of business. Specifically, Padron himself was present at the July 31, 2017, hearing at which the Court issued an oral order prohibiting the dissipation of assets of the Defendants, including the Contempt Defendants. In addition, Travelers had each of the Contempt Defendants, personally served with this Court's Order on August 7, 2017. (*See* Exs. C and D.) Indeed, the registered agent for Padron Enterprises is Padron, himself. (*See* Ex. D.) As such, the Contempt Defendants clearly had knowledge of this Court's Order prohibiting the dissipation of their assets.

11. The first element is also met as there is a clear and definite order of the Court, which the Contempt Defendants violated and are continuing to violate. The Court's August 2nd Order unambiguously states that "Defendants **shall not** dissipate, dissolve, or transfer assets, and **there shall be no change in Defendants' financial circumstances**, other than what is required by the regular course of business, unless and until the Court orders otherwise." (*See* Dkt. 186, at 1 (emphasis added).) The Court's Order makes clear that the Defendants, including the Contempt Defendants, "**shall not**" take any actions that affect their financial circumstances. Yet, this is precisely what Padron is attempting to effect by conveying the MAPCO and Padron Enterprises bank accounts and Padron Enterprises real estate to the Receiver, which are the subject of the Receiver's Motion to Distribute Property.

12. Padron has already violated this Court's Order by causing a cashier's check of $50,000 to be delivered to the Receiver. (*See* Ex. A, ¶ 3, Ex. A-1, at 1, ¶ 3.) It is unclear whether the $50,000 originated from Padron's personal assets or the assets of Padron Enterprises and/or MAPCO. What is clear, though, is that the cashier's check was delivered seven (7) days

**after** the Court entered the Order on the docket, and two (2) days **after** Padron, Padron Enterprises, and MAPCO were personally served with copies of the Order.

13. Furthermore, Padron has and is orchestrating the conveyance of Padron Enterprises and MAPCO's assets to satisfy Padron's personal indebtedness. (*See id.*) Padron has caused Padron Enterprises to pledge its funds in its BBVA Compass Bank accounts to the Receiver. (*See id.*, Ex. 1 (Settlement Agreement), at 1, ¶ 4(b) ("Payment to Craig Noack, Receiver of all funds at BBVA Compass Bank in the name of Padron and PEI (but not MapCo) in four accounts in the combined estimated amount of $7,183.25…").) In addition, Padron has caused Padron Enterprises and MAPCO to agree to pay the balance of $50,000 in five-monthly installments of $10,000 to the Receiver until fully paid. (*See id.*, Ex. 1 (Settlement Agreement), at 2, ¶ 6.) Specifically, the settlement agreement entered into with the Receiver provides that "Padron, MapCo and PEI agree to deposit **all funds received by MapCo or PEI throughout the repayment period**" into a BBVA Compass Bank account controlled by the Receiver. (*See id.*)

14. Padron is also seeking the State Court's blessing over a special warranty deed that Padron had Padron Enterprises exercise to convey title in the 34th Street Property to the Receiver. As such, Padron is using the assets of Padron Enterprises and MAPCO to pay his personal indebtedness to Mutual Bank of Omaha. Not only are these ongoing transactions violative of this Court's Order prohibiting the transfer of assets outside of the ordinary course of business, but these ongoing transactions are affecting fraudulent conveyances. Therefore, Travelers seeks a finding of civil contempt against Padron, Padron Enterprises, and MAPCO because they have and continue to transfer dissipate their assets in violation of this Court's Order. *See generally*,

*Dominguez-Perez v. Chertoff*, 294 Fed. Appx. 981, 983 (5th Cir. 2008) ("[t]he proper method to enforce an injunction is through the 'power of contempt'") (internal citations omitted).

15.  In addition to violating the Court's Order, the Contempt Defendants are in violation of the Court's Second Order.  The Court's Second Order clearly states that Contempt Defendants, as well as the other defendants to this case, are "remind[ed] … that Defendants' obligations to produce books and records under an ongoing affirmative duty to so disclose, regardless of dates, **remains in full force and effect**." (*See* Dkt. 187 at 37 (emphasis added).)  The Contempt Defendants refused to abide by this order.

16.  On August 3, 2017, Travelers, through counsel, sent letters demanding copies of the Contempt Defendants' bank statements for the past six months, and that such statements be produced within seven (7) days of receipt of the letters.  (*See* Ex. B.)  The August 3, 2017, letters were e-mailed on August 3.  (*See id.*)  On August 7, 2017, counsel for the Contempt Defendants saying that the Contempt Defendants cannot comply with the request for the bank statements within seven (7) days.  (*See* Ex. E.)  On August 8, 2017, Travelers, through counsel, responded and explained that the bank statement request was quite simple – the Contempt Defendants should simply be able to go online and print the bank statements.  (*See* Ex. F.)  To date, the Contempt Defendants still have not produced the requested bank statements, or provide any further response to the demand for bank statements.

**C. Upon a Finding of Civil Contempt, the Court is Authorized to Grant Travelers's Its Requested Relief.**

17.  Once the Court finds the Contempt Defendants in civil contempt, it is authorized to fashion sanctions in order to enforce compliance with the Court's orders.  *See generally United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04, 67 S.Ct. 677, 91 L.Ed. 884 (1947) ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for

either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.")

18.     Travelers seeks an order immediately staying the State Court proceedings on the Receiver's Motion to Distribute Property as it involves the turnover of property that is subject to this Court's various injunctive orders.  The Court orally ruled from the bench on July 31, 2017, granting Travelers's Third Motion for Preliminary Injunction, and confirmed its rulings in the Order and Second Order entered on August 2, 2017, at docket numbers 186 and 187, respectively.  Together, these two orders granted Travelers the requested preliminary injunctive relief it sought.  (*See* Dkt. 186, 187.)  As a result, the Court's issuance of a preliminary injunction in favor of Travelers constitutes a "judgment."  *See generally Nat'l Basketball Ass'n v. Minnesota Professional Basketball Ltd. P'ship*, 56 F. 3d 866, 871 (8th Cir. 1995) (citing *Henry v. First Nat'l Bank*, 595 F.2d 291, 306 (5th Cir. 1979); *cert. denied*, 444 U.S. 1074, 100 S.Ct. 1020, 62 L.Ed.2d 756 (1980); *Doe v. Ceci*, 517 F.2d 1203, 1206-06 (7th Cir. 1975)).  If the hearing on the Receiver's Motion to Distribute Property schedule for August 24, 2017 is allowed to proceed, there is a substantial likelihood that the very issues this Court decided upon in its Order and Second Order, would be relitigated and decided upon by the State Court.  As such, it is appropriate, and within the purview of this Court's power, to stay the proceedings in State Court.  *See generally id.* at 871-72 (holding that a federal court could enjoin state court proceedings following the issuance of a preliminary injunction).

19.     Travelers also asks that this Court order the immediate turnover of the Contempt Defendants bank statements for the past (6) months.  The Court has already ordered that these

records be produced several times,[7] and thus, Travelers seeks an order further reiterating to the Contempt Defendants their affirmative duty to produce these bank statements.

20. Travelers submits that Contempt Defendants have improperly taken advantage of this Court's "largesse in giving them the opportunity to be more specifically covered"[8] by the Court's injunctive orders by transferring and attempting to transfer their assets. As such, Travelers asks that this Court appropriately sanction MAPCO and Padron Enterprises by ordering them to repudiate their transfer of assets and pledged transfer of assets to the Receiver on the grounds that such transfers and pledged transfer are violative of this Court's Order. Specifically, Travelers asks this Court to order that (i) the $50,000 cashier's check be returned to MAPCO and Padron Enterprises and placed in the Court's registry, or paid to Travelers; (ii) the special warranty deed executed by Padron Enterprises transferring the 34th Street Property be deemed null and void; and (iii) MAPCO and Padron Enterprises' bank accounts and funds therein be released from the settlement agreement entered into with the Receiver. In conjunction with this requested relief, Travelers also asks this Court to expand its prior Order and Second Order, and freeze the assets, including all bank accounts, of MAPCO and Padron Enterprises.

**D. Travelers Seeks Attachment of Padron Enterprises and MAPCO's Bank Accounts Pursuant to Fed.R.Civ.P. 64 and Tex. Civ. Prac. & Rem. §§ 61.001, *et seq.***

21. In light of Padron's actions to transfer Padron Enterprises' and MAPCO's assets in disregard of this Court's Order, Travelers requests that this Court enter an order of attachment immediately securing all funds in Padron Enterprises' and MAPCO's bank accounts, including but not limited to, their BBVA Compass Bank accounts, and further order that the funds in the

---

[7] *See* the Court's orders at Dkt. 49, 144, and 187 (the Court reminds the parties that Defendants' obligations to produce books and records under an ongoing affirmative duty to so disclose, regardless of dates, remains in full and effect").

[8] *See* July 31, 2017, hearing transcript 45:15-19.

amount of $7,183.25 either be delivered to Travelers as collateral security or, in the alternative, deposited in the Court's registry.

22. "Attachment is available in a federal court, … 'under the circumstances and in the manner provided by the law of the state in which the district court is held.'" *Capital Ventures Intern. v. Republic of Argentina*, 443 F.3d 214, 218-19 (2d Cir. 2006) (quoting Fed. R. Civ. P. 64)); *see also Marsoft, Inc. v. United LNG, L.P.*, No. H-13-2332, 2014 WL 5386094, at *9 (S.D. Tex. Oct. 21, 2014) ("Under Texas law, writs of attachment … are available prior to judgment."). The grounds for attachment are set out in Tex. Civ. Prac. & Rem. §§ 61.001, *et seq.*, which states, in relevant part that:

> attachment is available to a plaintiff in a suit if:
>
> > (1) the defendant is justly indebted to the plaintiff;
> >
> > (2) the attachment is not sought for the purposes of injuring or harassing the defendant;
> >
> > (3) the plaintiff will probably lose his debt unless the writ of attachment is issued; and
> >
> > (4) specific grounds for the writ exist under Section 61.002.

*See* Tex. Civ. Prac. & Rem. § 61.001. Section 61.002, provides, in relevant part, that attachment is available if: "(7) the defendant has disposed of or is about to dispose of all or part of his property with the intent to defraud his creditors[.]" *See id.* at § 61.002.

23. Here, Travelers satisfies all the elements necessary for granting a writ of attachment. In seeking this relief Travelers relies on the attached Affidavit of Christine T. Alexander, as well as the Affidavits of Christine T. Alexander previously submitted in support of its Third Motion for Preliminary Injunction (Dkt. 166) and its Motion for Specific Injunctive Relief Required to be Posted by Each Defendant Pursuant to this Court's Order dated August 2, 2017 (Dkt. 192).

24.     More specifically, the Contempt Defendants are indebted to Travelers pursuant to the General Agreement of Indemnity dated September 16, 2008 ("2008 GAI"). (*See* Dkt. 192, at 4, ¶ 5; *see also* Dkt. 192, Ex. 1, ¶¶ 15-28.)  To date, the Contempt Defendants and the other defendant, have not indemnified Travelers nor posted collateral security for any of its losses related to the bonds or the Indemnity Agreement.[9]  (*See* Dkt. 192, Ex. 1, ¶ 29.)  Furthermore, as evidenced by the Receiver's Motion to Distribute Property, there exists at least $7,183.25 in MAPCO's and/or Padron Enterprises' BBVA Compass Bank accounts.  (*See* Ex. A, ¶ 3, Ex. A-1, Ex. 1, ¶4 (b) (Settlement Agreement).)

25.     Moreover, MAPCO and Padron Enterprises have allowed and continue to allow their assets to dissipate.  For example, as noted *supra*, the 34th Street Property transferred to the Receiver belonged to Padron Enterprises.  (*See* Ex. A, ¶ 3, Ex. A-1, at 1, ¶¶ 3-4, Exs. 1, 2.) Similarly, it is MAPCO's and Padron Enterprises' bank accounts and funds that are pledged to pay the Receiver to satisfy the Mutual of Omaha Bank Judgment. (*See* Ex. A, ¶3, Ex. A-1, at 1, ¶ 3, Exs. 1, ¶¶ 4-7.)  Furthermore, as detailed in Travelers's Third Motion for Preliminary Injunction, Padron has engaged in asset-depleting transactions during the pendency of this lawsuit that have diminished Travelers's potential sources of recovery. (*See* Dkt. 166, p. 19, ¶ 45 (citing Exhibit A to Dkt. 166, Alexander Aff. at ¶¶ 41-43 and Exhibit A-29 thereto).)  As such, Travelers submits that such evidence is more than sufficient to satisfy Tex. Civ. Prac. & Rem. § 61.002(7) and the requirement to demonstrate an "intent to defraud … creditors."

### III.     CONCLUSION

26.     For the foregoing reasons, Travelers requests this Court to enter an order (i) finding Michael A. Padron, Padron Enterprises, Inc., and MAPCO, Inc. in civil contempt; (ii)

---

[9] The "Indemnity Agreement" refers collectively to the 2008 GAI and the additional riders to the 2008 GAI.

staying the State Court's hearing on the Receiver's Motion to Distribute Property; (iii) stating that further contemptuous actions by Michael A. Padron, Padron Enterprises, Inc., and MAPCO, Inc. may lead to a finding of criminal contempt; (iv) ordering the turnover of the bank statements for the past six months for all bank accounts held in the names of, or for which, Michael A. Padron, Padron Enterprises, Inc., and MAPCO, Inc. are signatories on; (v) requiring MAPCO, Inc. and Padron Enterprises to repudiate their pledge and transfer of assets to the Receiver; (vi) requiring the $50,000 cashier's check to be deposited into the registry of the Court or paid to Travelers in partial satisfaction of Michael A. Padron's, Padron Enterprises, Inc.'s, and MAPCO, Inc.'s collateral security obligations; (vii) issuing a writ of attachment immediately securing all funds in Padron Enterprises, Inc.'s and MAPCO, Inc.'s BBVA Compass Bank accounts; and (viii) granting such further relief, both general and specific, as may be appropriate in accordance with the nature of this cause.

**KREBS FARLEY, PLLC**

By: ___/s/ Ryan D. Dry_____
Ryan D. Dry
State Bar No. 24050532
Bryan A. Badeaux
State Bar No. 24087127
2301 W. Plano Parkway, Suite 200
Plano, Texas 75075
(214) 945-3027 Telephone
(214) 945-3021 Facsimile
rdry@kfplaw.com
bbadeaux@kfplaw.com

and

> Jennifer L. Kneeland
> *Admitted Pro Hac Vice*
> WATT, TIEDER, HOFFAR & FITZGERALD, LLP
> 1765 Greensboro Station Place, Suite 1000
> McLean, Virginia 22102
> (703) 749-1026 Telephone
> (703) 893-8029 Facsimile
> jkneeland@watttieder.com

**ATTORNEYS FOR TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA**

**CERTIFICATE OF SERVICE**

I certify that on this the 18th day of August, 2017, the foregoing was served pursuant to the Federal Rules of Civil Procedure upon all counsel of record.

> */s/ Ryan D. Dry*
> Ryan D. Dry