IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, | § § § | |
| *Plaintiff,* | § § § | |
| vs. | § § | |
| MICHAEL PADRON, MARIA PADRON, JOE ALEX MUNIZ, MICHAEL WIBRACHT, LAURA WIBRACHT, RUEBEN VILLARREAL, MANUELA VILLARREAL, JAMES BRIAN TAYLOR, FRAMEEDA TAYLOR, STEVEN WIBRACHT, ERIN WIBRACHT, RAYMOND JENKINS, WENDY JENKINS, MAPCO, INC., BLACKHAWK VENTURES, LLC, PROMASTERS CONSTRUCTION, INC., JAMCO VENTURES, LLC, HOMELAND CONSTRUCTION, INC., MBH VENTURES, LLC, MILCON CONSTRUCTION, LLC, TEAM JAMA, CORE LOGISTICS SERVICES, LLC, WPS GROUP, LLC, PADRON ENTERPRISES, INC., BLACKHAWK-JAMCO A SDVO, LLC, BLACKHAWK/JAMCO JV2, | § § § § § § § § § § § § § § § § § § § § § § § § | SA-15-CV-00200-DAE |
| *Defendants.* | § § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable United States District Judge David A. Ezra:**

This Report and Recommendation concerns Plaintiff Travelers Casualty and Surety

Company of America's Motion for Final Summary Judgment [#268]. Also before the Court are

the following responses to the motion: Response of Defendant Maria Bass [#269], Response of

Defendant Milcon Construction, LLC (hereinafter "Milcon") [#272], Response of Defendants

Joe Alex Muniz, Jamco Ventures, LLC and Team Jama (hereinafter "Jamco Defendants") [#273], Response of the Core Defendants [#274], and Response and Objections of Michael Padron, Padron Enterprises, Inc., Ruben Villarreal, Manuela Villareal, James Brian Taylor; Frameeda Taylor, Blackhawk Ventures, LLC d/b/a Blackhawk Constructors, Promasters Construction, Inc., WPS Group, LLC d/b/a Federal Management Solutions, Mapco, Inc., Blackhawk-Jamco A SDVO, LLC, and Blackhawk/Jamco JV2 (hereinafter "Blackhawk Defendants") [#275]. Plaintiff Travelers Casualty and Surety Company of America (hereinafter "Travelers") also filed the following replies to these responses: Objections and Reply to the Response of Maria Bass [#271], Reply to the Response of the Blackhawk Defendants [#277], Reply to the Response of the Core Defendants [#278], Reply to the Response of the Jamco Defendants [#279], and Reply to the Response of Milcon [#280].

By its motion, Travelers seeks final summary judgment on its claims for contractual indemnity (Counts IV and V of Travelers' Amended Complaint [#106]) against all named Defendants except for Defendants Steven and Erin Wibracht.[1] The motion for summary judgment was referred to the undersigned for a report and recommendation pursuant to Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas on December 19, 2018. The Court held a hearing on the motion on January 9, 2019, at which all relevant parties were present through counsel. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that Travelers' Motion for Summary Judgment be granted in part and denied in part as follows.

---

[1] Steven and Erin Wibracht filed for Chapter 7 bankruptcy on September 30, 2017 [#221], which resulted in the automatic stay of all claims asserted against them. *See* 11 U.S.C. § 362.

## I.  Background

Both Judge Ezra and the undersigned have written numerous opinions, orders, and reports and recommendations in this case since its inception in 2015.  The undersigned will therefore not chronicle the entire procedural history and factual background of this case.  For the purposes of the pending motion for summary judgment, it is sufficient to state the following:

Travelers is an insurance company that issued performance, payment, and surety bonds, beginning in 2008, for construction projects undertaken by Defendants Blackhawk Ventures, LLC, Blackhawk/Jamco SDVO, and Core Logistics Services, LLC as the principal obligors. (*See* August 2, 2017 Order [#187] at 3; List of Bonds Issued [#268-8].)  In exchange for the bonds, a number of the named Defendants in this action executed a General Agreement of Indemnity on September 16, 2008, whereby they agreed to jointly and severally "exonerate, indemnify and save [Travelers] harmless from and against all Loss."  (General Agreement of Indemnity [#268-3] at ¶¶ 3, 7.)  "Loss" is defined broadly by the General Agreement of Indemnity as "[a]ll loss and expense of any kind or nature, including attorneys' and other professional fees, which [Travelers] incurs in connection with any Bond or this Agreement . . . ." (General Agreement of Indemnity [#268-3] at ¶ 1.)  In other words, the parties to the General Agreement of Indemnity agreed to become indemnitors of Travelers, with joint and several liability, in the event of any loss incurred by Travelers in connection with any bond issued.

The General Agreement of Indemnity is signed by Defendants Michael Padron, Maria Padron, Joe Alex Muniz, Michael Wibracht, Laura Wibracht, Rueben Villarreal, Manuela Villarreal, Mapco, Inc., Blackhawk Ventures, LLC, Promasters Construction, Inc., Jamco Ventures, LLC, Homeland Construction, Inc., MBH Ventures, LLC, and Milcon Construction, LLC, among other individuals and entities not named as Defendants in this action.  (General

Agreement of Indemnity [#268-3] at 5–10.)  Other Defendants executed Additional Indemnity Riders to the General Agreement of Indemnity with Travelers on various dates subsequent to the creation of the initial contract, all of which provide that the signatory "shall become an additional Indemnitor to the Agreement bound by all of the terms and conditions of the Agreement." (*See, e.g.*, Rider [#268-4] at 2.)  Defendant Team Jama executed an Additional Indemnity Rider on September 30, 2010.[2]  (Rider [#268-4].)  Defendants Core Logistics Services, LLC, WPS Group, LLC, and Blackhawk Ventures, LLC executed an Additional Indemnity Rider on March 14, 2011.  (Rider [#268-5].)  Defendant Padron Enterprises, Inc. executed an Additional Indemnity Rider on January 3, 2013.  (Rider [#268-6].)  Defendants James Brian Taylor, Frameeda Taylor, Raymond Jenkins, and Wendy Jenkins executed an Additional Indemnity Rider on April 10, 2013.  (Rider [#268-7].)

The final two named Defendants—Blackhawk-Jamco A SDVO, LLC and Blackhawk/Jamco JV2—never executed an Additional Rider.  Rather, Travelers maintains that these entities are additional indemnitors of Travelers under the General Agreement of Indemnity's definition of "Indemnitor."  (Am. Compl. [#106] at ¶ 65; Mot. Summ. J. [#268] at ¶ 26.)  The General Agreement of Indemnity defines "Indemnitor" broadly as the

> Undersigned, all new indemnitors added to this Agreement by rider, their present and future direct and indirect subsidiaries, affiliates, and parent companies, and all of their successors and assigns, and any joint venture, co-venture, consortium, partnership, trust, association, limited liability company or other legal entity in which one or more of them are involved,

---

[2] Team Jama attempts to argue in its response to Travelers' motion for summary judgment that it is not an indemnitor under the contract because the Additional Rider it executed refers to a September 14, 2008 General Agreement of Indemnity, rather than the correct date of September 16, 2008, and is therefore not valid.  (Jamco Resp. [#273] at ¶5.)  Team Jama admitted in its pleadings that it signed the General Agreement and the Additional Rider.  (Team Jama Am. Answer [#114] at ¶ 33.)  The Court should reject the argument, raised in contradiction to Team Jama's admission in its amended answer, that Team Jama did not intend to execute a rider pertaining to the General Agreement of Indemnity at issue in this case.

whether in existence now or formed or acquired hereafter, and any entity that obtains Bonds from [Travelers] at the request of any of the aforementioned parties, or any combination of the above.

(General Agreement of Indemnity [#268-3] at ¶ 1.)   It is undisputed that Defendant Blackhawk-Jamco A SDVO, LLC is a limited liability company whose members are Blackhawk and Jamco Ventures, signatories on the original General Agreement of Indemnity.  (Am. Compl. [#106] at ¶ 26; Blackhawk Am. Answer [#109] at ¶ 26; Jamco Am. Answer [#113] at ¶ 26.)   It is also undisputed that Defendant Blackhawk/Jamco JV2 is a joint venture between these same two original signatories.[3] (Am. Compl. [#106] at ¶ 27; Blackhawk Am. Answer [#109] at ¶ 27; Jamco Am. Answer [#113] at ¶ 27.)

In total, Travelers issued performance and payment bonds on behalf of one or more of Defendants with a collective sum in excess of $900 million.  (Alexander Aff. [#268-2] at ¶ 20; List of Bonds Issued [#268-8] at 2–51.)  In 2014, Travelers began to receive claims in excess of $5.5 million under certain bonds naming Blackhawk and Blackhawk/Jamco SDVO as principal obligors.  (August 2, 2017 Order [#187] at 4; Alexander Aff. [#268-2] at ¶ 22; List of Claims Received [#268-9] at 2–3.)  Travelers settled and/or paid many of these claims asserted against the bonds where it was determined necessary, relying on the General Agreement of Indemnity's "Claim Settlement" provision.  (Alexander Aff. [#268-2] at ¶ 23; List of Claims Settled and/or Paid [#268-9] at 2–3; General Agreement of Indemnity [#268-3] at ¶ 4.)  That provision provides that Travelers:

---

[3] The Blackhawk Defendants attempt to dispute this fact in their response to Travelers' motion for summary judgment by arguing that there is no competent summary judgment evidence that these two joint ventures are indemnitors under the contract.  (Blackhawk Resp. [#275] at ¶ 15.)   However, the Blackhawk Defendants admitted in their pleadings that Blackhawk-JAMCO SDVO and Blackhawk-JAMCO JV2 qualify as indemnitors under the contract because they are limited liability companies in which one or more of the indemnitors are partners.  (Blackhawk Am. Answer [#109] at ¶¶ 27, 65.)  The Court should reject this argument.

> shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against [Travelers] or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, and its determination shall be final, binding and conclusive upon the Indemnitors. [Travelers] shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

(General Agreement of Indemnity [#268-3] at ¶ 4.) As of March 31, 2018, Travelers claims it had paid $10,472,207.13 in order to compromise, settle, and/or satisfy claims in connection the bonds and the General Agreement of Indemnity. (Alexander Aff. [#268-2] at ¶ 24; List of Claims Settled and/or Paid [#268-9] at 2–3; Copies of Checks Issued on Claims [#268-10] at 3–110; Copies of Checks Issued on Claims [#268-11] at 1–118.) Travelers claims it has also incurred over $2.7 million in attorneys' and other professional fees in connection with the bonds and the contract. (Alexander Aff. [#268-2] at ¶ 25; Fees Chart [#268-12] at 2–5.)

Travelers made numerous demands for indemnification from Defendants on these claims. (Alexander Aff. [#268-2] at ¶ 21.) When the claims were not resolved to Travelers' satisfaction, Travelers filed this lawsuit on March 17, 2015, demanding that Defendants post collateral relative to the paid claims and provide access to Defendants' financial books and records,[4] and asserting claims for contractual indemnity against Defendants, among other claims. (Orig. Compl. [#1].) Travelers' Amended Complaint, the live pleading in this case, again seeks specific

---

[4] The General Agreement of Indemnity contains a "Collateral Security" provision and a "Books and Records" provision, which have been the subject of a number of prior orders of the Court in this case. (*See, e.g.*, August 2, 2017 Order [#187].) The "Collateral Security" provision requires Indemnitors to "deposit with [Travelers], upon demand, an amount as determined by Travelers sufficient to discharge any Loss or anticipated Loss." (General Agreement of Indemnity [#268-3] at ¶ 5.) The "Books and Records" provision requires Indemnitors to "furnish upon demand . . . the records of Indemnitors including, but not limited to, books, papers, records, documents, contracts, reports, financial information, accounts and electronically stored information, for the purpose of examining and copying them." (General Agreement of Indemnity [#268-3] at ¶ 10.)

performance on Defendants' obligations to post collateral relative to the Blackhawk Claims (Count I), demands access to Defendants' books and records to determine their ability to post such collateral and satisfy their other obligations under the contract (Count II), and seeks a temporary restraining ordering the same (Count III). (Am. Compl. [#106] at 96–115.) Travelers also sues Defendants for two counts of contractual indemnity, one relative to the Blackhawk Claims (Count IV) and one relative to all other claims (Count V) and for the fraudulent transfer of property in an attempt to defraud Travelers as a creditor (Count VI). (Am. Compl. [#106] at ¶¶ 116–138.) The Core Defendants (Core Logistics Services, Laura Wibracht, and Michael Wibracht) have asserted a cross-claim against Defendants Michael Padron, James Taylor, Mapco, and WPS Group for indemnification and release from their obligations under the bonds based on a series of agreements between these parties. (Cross-Claim [#111].) Maria Bass has asserted a cross-claim against Michael Padron for indemnification and release based on the parties' divorce decree. (Cross-Claim [#115].)

By its motion for summary judgment, Travelers now seeks summary judgment on its claims for contractual indemnity (Counts IV and V). Travelers' motion for summary judgment and this report and recommendation do not address and will not resolve Travelers' remaining claims (Counts I, II, III, and VI) or the pending cross-claims against Michael Padron and others.

## II. Legal Standard

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c). A dispute is genuine only if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Catrett*, 477 U.S. at 323. Once the movant carries its burden, the burden shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating that there is a genuine issue for trial. *Miss. River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). The Court will view the summary judgment evidence in the light most favorable to the non-movant. *Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

"After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Westphal*, 230 F.3d at 174. However, if the party moving for summary judgment fails to satisfy its initial burden of demonstrating the absence of a genuine issue of material fact, the motion must be denied, regardless of the nonmovant's response. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

### III. Analysis

Travelers asks the Court to grant its motion for summary judgment on its claims for contractual indemnity and to enter a judgment in its favor and against all Defendants (except for

Steven and Erin Wibracht) in the sum of $14,834,408.35 to indemnify Travelers for its losses, including its attorneys' and other professional fees, expenses, and accrued interest. Travelers argues there is no genuine issue of material fact on any element of its claims for contractual indemnity and whether Travelers has incurred the identified losses in fulfilling its obligations to Defendants as their surety.

Because this is a diversity case, this Court applies Texas law to Travelers' contractual indemnity claims and in analyzing the construction of the General Agreement of Indemnity and its related contracts. *Harken Expl. Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 n.3 (5th Cir. 2001). The elements of a claim of contractual indemnity under Texas law are: (a) a contractual indemnity agreement exists; (b) the agreement obligates defendants to indemnify the surety in the event claims are made on the bonds issued; (c) claims were made on the bonds issued; (d) all conditions precedent for recovery have occurred, been performed, been waived, or been excused; and (e) the surety has been damaged. *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 719 (5th Cir. 1995). When the terms of an indemnity agreement are clear and unambiguous, Texas law gives effect to the agreement as written. *Ideal Lease Serv., Inc. v. Amoco Prod. Co.*, 662 S.W.2d 951, 953 (Tex. 1983).

No party disputes the basic facts that a General Agreement of Indemnity was executed on September 16, 2008 in favor of Travelers and that Paragraph 3 of the contract contains a contractual indemnity provision, which obligates the signatories of the contract and the various Additional Riders to indemnify Travelers in the event claims are made on the bonds issued. (Am. Compl. [#106] at ¶ 32; Blackhawk Am. Answer [#109] at ¶ 32–35; Milcon Am. Answer [#110] at ¶¶ 32, 57; Core Defendants' Am. Answer [#111] at ¶¶ 13. 19; Muniz Am. Answer [#112] at ¶ 32; Jamco Am. Answer [#113] at ¶ 32; Team Jama Am. Answer [#114] at ¶ 32;

Maria Bass Am. Answer [#115] at ¶ 32.)  The complete text of Paragraph 3 of the contract reads as follows:

> Indemnitors shall exonerate, indemnify and save [Travelers] from and against all Loss.  An itemized, sworn statement by an employee of [Travelers], or other evidence of payment, shall be prima facie evidence of the propriety, amount and existence of Indemnitors' liability.  Amounts due to [Travelers] shall be payable upon demand.

(General Agreement of Indemnity [#268-3] at ¶ 3.)

Travelers has also submitted undisputed summary judgment evidence of the numerous claims made on the bonds issued, of Travelers' settlement of many of these claims, and of the damages Travelers has incurred as a result.  (List of Claims Received [#268-9] at 2–3; List of Claims Settled and/or Paid [#268-9] at 2–3; Copies of Checks Issued on Claims [#268-10] at 3–110; Copies of Checks Issued on Claims [#268-11] at 1–118.)  This evidence is accompanied by the sworn affidavit of Christine T. Alexander, Managing Director and Counsel in Travelers' Bond and Specialty Insurance Division.[5]  (Alexander Aff. [#268-2].)  According to a plain reading of Paragraph 3 of the contract, the affidavit and its attached exhibits are prima facie evidence of the extent of the indemnitors' liability.  Texas courts have repeatedly upheld such prima-facie clauses as valid.[6]  *See Engbrock v. Federal Ins. Co.*, 370 F.2d 784, 786 (5th Cir.

---

[5]  The Blackhawk Defendants assert numerous evidentiary objections to the Alexander Affidavit in their response to Travelers' motion for summary judgment [#275].  The undersigned has reviewed these objections, as well as Travelers' responses thereto, which are contained in its reply [#277]. The Court will overrule the objections.  *See Safeco Ins. Co. v. K-Bar Servs., Inc.*, No. A-06-CA-822-SS, 2007 WL 9701455, at *3 (W.D. Tex. Sept. 11, 2007) (holding that a sworn statement by a surety's representative supported by an itemized expense sheet is competent summary judgment evidence with respect to an indemnity agreement containing a prima-facie clause and overruling objections to that evidence).

[6]  Accordingly, the Court should reject the argument of various Defendants that the General Agreement of Indemnity is void because it violates public policy due to the unequal bargaining positions of the parties.  (*See* Milcon Resp. [#272] at ¶ 3; Jamco Resp. [#273] at ¶ 8.) Defendants cite to no authority for this position, and the Court has found none.

1967) (collecting Texas cases); *Travelers Cas. & Sur. Co. of Am. v. James*, No. 3:15-CV-1999-N, 2016 WL 9306254, at *5 (N.D. Tex. Oct. 5, 2016) (citing *Engbrock*); *Safeco Ins. Co. of Am. v. Gaubert*, 829 S.W.2d 274, 282 (Tex. App.—Dallas 1992, writ denied).

Accordingly, Travelers has satisfied its burden to establish all the elements of its claims for contractual indemnity and is entitled to summary judgment unless Defendants are able to raise some genuine issue of material fact that affects their ultimate liability as indemnitors. The undersigned addresses the arguments raised by each Defendant or group of Defendants in turn and concludes that the motion for summary judgment should be granted with the following exceptions: (1) the motion should be denied as to Defendants Joe Alex Muniz, Michael Wibracht, and Laura Wibracht because a genuine issue of material fact remains as to the scope of these individual indemnitors' liability under the contract; and (2) the motion should be granted in so far as the Court should hold Traveler's is entitled to its reasonable attorneys' fees, but denied insofar as it asks the Court to find as a matter of law that Travelers' requested fees in excess of $2.7 million are recoverable and reasonable as a matter of law.

A.      **No Defendant has raised a genuine issue of material fact on the question of whether Travelers engaged in fraud or bad faith in settling the claims on the bonds at issue.**

The Blackhawk Defendants, the Jamco Defendants (Joe Alex Muniz, Jamco Ventures, LLC, and Team Jama), and the Core Defendants (Core Logistics Services, LLC, Michael Wibracht, and Laura Wibracht) contend that Travelers interfered with and made unnecessary payments on certain bonded projects, such that it unnecessarily inflated its claimed damages. (Jamco Response [#273] at ¶ 2; Blackhawk Response [#275] at ¶¶ 18–23; Core Defendants' Resp. [#274] at ¶¶ 4–5.) As previously stated, the General Agreement of Indemnity contains a prima-facie clause, which provides that an itemized, sworn statement by an employee of Travelers, or other evidence of payment, presumptively establishes the amount and existence of

the indemnitors' liability. (General Agreement of Indemnity [#268-3] at ¶ 3.) Under Texas law, "[a]n unambiguous contractual right to indemnification on a settlement is absolute, unless the principal raises and proves an affirmative defense such as fraud." *Old Republic Sur. Co. v. Palmer*, 5 S.W.3d 357, 361–62 (Tex. App.—Texarkana 1999, no pet.); *see also Fid. & Deposit Co. of Md. v. Tri-Lam Co.*, No. SA-06-CA-207-XR, 2007 WL 1452632, at *3 (W.D. Tex. May 15, 2007). Indemnitors seeking to challenge a prima-facie clause therefore carry a "heavy burden" to avoid summary judgment. *U.S. Fire Ins. Co. v. Rey-Bach, Inc.*, No. Civ.A.3:02-CV-2133-K, 2004 WL 1836314, at *2–3 (N.D. Tex. Aug. 16, 2014).

According to the Jamco Defendants, Travelers' decision to pay Tanner Heavy Equipment's claim relating to JAMCO's Fort Polk, Louisiana project was unnecessary, unreasonable, improper, and wrongful because Tanner's concrete work was non-conforming, deficient, and untimely. (JAMCO Resp. [#273] at ¶ 2; Muniz Decl. [#273-1] at ¶ 8; Correspondence and Non Conformance Notices [#273-2].) The Blackhawk Defendants similarly argue that Travelers executed an "unreasonable settlement" with Baker Concrete Company on a Dallas Post Office job after Blackhawk terminated Baker for faulty work and improperly paid a claim asserted by Manhattan Construction on a West Palm Beach project (Blackhawk Resp. [#275] at ¶¶ 18–19; Taylor Aff. [#275-1] at ¶ 3.) The Core Defendants accuse Travelers of "misguided actions" in settling claims relating to these same three projects, despite the fact that the work was incomplete and deficient. (Core Defendants' Resp. [#274] at ¶¶ 4–5; Clay Aff. [#274-1] at ¶¶ 5–.) In essence, Defendants argue that Travelers did not settle discrete claims in good faith and therefore its damages claim is excessive.

A bond surety does not owe a common law duty of good faith to its principal. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 280 (Tex. 1998); *Great Am. Ins. Co. v.*

12

*North Austin Mun. Util. Dist. No. 1*, 908 S .W.2d 415, 420 (Tex. 1995). Moreover, the General Agreement of Indemnity does not contractually limit Travelers' right to reimbursement on its good faith payment or settlement of claims but rather confers Travelers with "sole discretion" to determine whether and how to settle a given claim. (General Agreement of Indemnity [#268-3] at ¶ 4.) *Cf. CAT Contracting, Inc.*, 964 S.W.2d at 279 (contractually conditioning surety's right to settle on a showing of good faith). Thus, in order to avoid summary judgment, "[w]ith no contractual source for a duty of good faith, [Defendants] must show that [Travelers] settlement and payment of claims involved fraud." *Travelers Cas. & Sur. Co. of Am. v. James*, No. 3:15-CV-1999-N, 2016 WL 9306254, at *6 (N.D. Tex. Oct. 5, 2016). Defendants fail to do so.

Texas courts have held that fraud, or "bad faith," in the context of a surety agreement, "means more than merely negligent or unreasonable conduct; it requires proof of an improper motive or willful ignorance of the facts." *CAT Contracting*, 964 S.W.2d at 285. In the absence of a contractual good-faith provision, a surety need not have conducted a "reasonable" investigation prior to a determination that claims should be settled or paid. *Id.* "Common-law principles such as reasonableness of the settlement and a requirement of potential liability do not apply where the indemnity contract expressly gives the surety the right to settle claims without an adjudication." *Old Republic*, 5 S.W.3d at 361 (citing *CAT Contracting*, 964 S.W.2d at 285). Nowhere in the pleadings of the Blackhawk, JAMCO, or Core Defendants do Defendants plead fraud, bad faith, or even negligence or lack of good faith with regard to Travelers' settlement of claims, and at most the arguments and evidence offered in response to Travelers' motion argue negligence or unreasonableness, neither of which is sufficient to overcome a prima-facie clause. *See Engbrock*, 370 F.2d at 787 (affirming trial judge's denial of admission of evidence at trial that surety was negligent in settling claims); *James*, 2016 WL 9306254, at *7–8 (granting motion

for summary judgment where allegations were that Travelers acted negligently in paying a claim without a more thorough investigation, as "negligence does not constitute fraud").

For these same reasons, the Jamco Defendants' argument that Travelers failed to mitigate its damages is meritless. Again, the General Agreement of Indemnity's right-to-settle provision expressly allows Travelers to handle claims at its "sole discretion." (General Agreement of Indemnity [#268-3] at ¶ 4.) "[T]he defense of mitigation does not apply because Travelers was within its rights under the right-to-settle clause to settle or pay claims in full at its discretion, whether or not this it was reasonable to do so." *James*, No. 2016 WL 9306254, at *6.

In summary, no Defendant has pleaded the affirmative defense of fraud with respect to Travelers' settlement of claims or proffered sufficient evidence to raise a genuine dispute of material fact as to any fraud by Travelers in exercising its discretion to settle various claims on the bonds at issue. Accordingly, the prima-facie clause contained in the General Agreement of Indemnity is conclusive as to the amount and extent of Travelers' losses under the contractual indemnity provision of the contract.

**B.     Neither Milcon nor the Jamco Defendants has raised a genuine issue of material fact on the question of whether Travelers fraudulently induced it into the Contract.**

Milcon and the Jamco Defendants argue that Travelers made material misrepresentations during contract negotiations that misled Defendants into believing they would only be liable for losses related to the bonds they themselves had obtained as opposed to bearing joint and several liability on all bonds issued by Travelers regardless of the identity of the obligor. (Milcon Resp. [#272] at ¶ 2; Jamco Resp. [#273] at ¶ 7.) Milcon and the Jamco Defendants both plead the affirmative defense of fraudulent inducement to the formation of the General Agreement of Indemnity. (Milcon Am. Answer [#110] at 18; Jamco Am. Answer [#113] at 21–22.) The Jamco Defendants, however, failed to provide any summary judgment evidence to support their

allegations of fraudulent inducement. The only affidavits attached to their summary judgment response are those of Joe Muniz and Jamco's attorney William Klingman. (Muniz Aff. [#273-1]; Klingman Aff. [#273-4].) Neither addresses this issue. Accordingly, the Jamco Defendants failed to satisfy their summary judgment burden to raise a genuine issue of material fact on their affirmative defense of fraudulent inducement and the Court only considers the arguments of Milcon to that effect.

Milcon attached to its summary judgment response the affidavit of Armando A. "Rocky" Aranda, Jr., owner of Milcon Construction and the individual who signed the General Agreement of Indemnity on Milcon's behalf. (Aranda Aff. [#272-1] at ¶ 3; General Agreement of Indemnity [#268-3] at 15.) Aranda's affidavit states that Milcon is not a bond principal for any of the bonds at issue in this lawsuit and was never a party to or participant in any of the projects for which these bonds were issued. (Aranda Aff. [#272-1] at ¶ 4.) Aranda further states that representatives of Travelers repeatedly represented to him that "indemnity obligations necessary to receive bonding capacity would not extend beyond Milcon's obligations for bonds issued on behalf of Milcon." (Aranda Aff. [#272-1] at ¶ 5.) Aranda maintains that it was based upon those promises and representations that Milcon executed the General Agreement of Indemnity with an understanding that Milcon's liability would be limited to $1,000,000 as related to the bonds to which Milcon was an obligor. (Aranda Aff. [#272-1] at ¶ 5.) In contrast, Travelers' individual liability schedule lists damages in an amount of $12,497,729.34, all of which stem from claims on bonds issued for Blackhawk Ventures, Jamco Ventures, or JAMCO A SDVO. (Milcon Liability Sched. [#268-26].) Finally, Aranda states that he sent written termination to Travelers of all participation by Milcon in any and all indemnity arrangements which may have

existed on October 27, 2014, and Travelers has not issued any bond on Milcon's behalf in over three years. (Aranda Aff. [#272-1] at ¶ 6.)

Under Texas law, a fraudulent inducement claim has six elements: (1) a material representation, (2) its falsity, (3) either the defendant's knowledge of the falsity or recklessness as to a positive assertion, (4) intent to induce reliance, (5) the plaintiff's entry into a contract in reliance on the representation, and (6) injury. *See Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011). These same elements apply to an affirmative defense of fraudulent inducement. *See O'Hare v. Vulcan Capital, L.L.C.*, No. SA-04-CA-566-H, 2009 WL 10665357, at *5 (W.D. Tex. Mar. 30, 2009). Aranda's affidavit appears to assert facts to support each of these elements. Travelers argues, however, that the inclusion of an integration provision in the General Agreement of Indemnity is fatal to Milcon's defense of fraudulent inducement.

An integration or merger clause is a contractual provision that prevents the inclusion of prior arrangements between the parties in the contract because all such understandings have been merged into the written document. *Italian Cowboys Partners, Ltd.*, 341 S.W.3d at 335. Standard integration clauses have the effect of barring the introduction of parol evidence to establish the parties' intent in creating a contract unless the court first determines that the contract is ambiguous. *Edascio, L.L.C. v. NextiraOne L.L.C.*, 264 S.W.3d 786, 796 (Tex. App.—Houston [1st Dist.] 2008, no pet.)

The integration provision in the General Agreement of Indemnity at issue here contains standard merger language as follows:

> WE HAVE READ THIS INDEMNITY AGREEMENT CAREFULLY. THERE ARE NO SEPARATE AGREEMENTS OR UNDERSTANDINGS WHICH IN ANY WAY LESSEN OR OBLIGATIONS AS ABOVE SET FORTH. IN TESTIMONY HEREOF,

THE INDEMNITORS HAVE SET THEIR HANDS AND FIXED THEIR
SEALS AS SET FORTH BELOW.

(General Agreement of Indemnity [#268-3] at 4.)  The Texas Supreme Court has made clear that

"[p]ure merger clauses, without an expressed clear and unequivocal intent to disclaim reliance or

waive claims for fraudulent inducement, have never had the effect of precluding claims for

fraudulent inducement."  *Italian Cowboys Partners, Ltd.*, 341 S.W.3d at 334.  Where a clause

includes a disclaimer of reliance specifically, however, such a disclaimer may be binding and

conclusively negate the element of reliance in a suit for fraudulent inducement.  *Id.* at 332 (citing

*Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008); *Schlumberger Tech. Corp. v.*

*Swanson*, 959 S.W.2d 171, 181 (Tex. 1997) ("[A] release that clearly expresses the parties'

intent to waive fraudulent inducement claims, or one that disclaims reliance on representations

about specific matters in dispute, can preclude a claim of fraudulent inducement.").

The integration clause to which Travelers directs the Court does not contain any

reference to or disclaimer of reliance, and merely expresses the intent for the parties' contract to

constitute their entire agreement.  Accordingly, the integration clause in the General Agreement

of Indemnity does not necessarily negate the element of reliance essential to Milcon's

affirmative defense of fraudulent inducement.  However, the affidavit of Aranda fails to raise a

genuine issue of material fact for another reason.  A party must actually and *justifiably* rely on a

misrepresentation for the claimed reliance to give rise to a claim or defense of fraud.  *DRC Parts*

*& Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App.—Houston [14th

Dist.] 2003, no pet.) (en banc) (citing *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51

S.W.3d 573, 577 (Tex. 2001)).  "Therefore, reliance upon an oral representation that is directly

contradicted by the express, unambiguous terms of a written agreement between the parties is not

justified as a matter of law."  *Id.*

Any claimed reliance by Milcon on any oral representations by Travelers was not justified and therefore cannot support Milcon's defense of fraudulent inducement. The plain terms of the General Agreement of Indemnity impose joint and several liability on the signatories to the contract. (General Agreement of Indemnity [#268-3] at ¶ 7.) No other provision of the contract limits the liability of Milcon, such that it is reasonable for Milcon to argue that it believed its exposure was limited to $1,000,000. The governing law in Texas is that "a party who enters into a written contract while relying on a contrary oral agreement does so at its peril and is not rewarded with a claim for fraudulent inducement when the other party seeks to invoke its rights under the contract." *DRC Parts & Accessories*, 112 S.W.3d at 859. To prove a claim for fraudulent inducement, Milcon must point to misrepresentations that concern matters other than those the contract explicitly addresses and has failed to do so. Because the statements in Aranda's affidavit are in direct contradiction to the express terms of the contract, they cannot raise a genuine issue of material fact on a defense of fraudulent inducement. Milcon's defense fails as a matter of law, and Travelers' motion for summary judgment should be granted as to this Defendant.

**C.      Joe Muniz, Laura Wibracht, and Michael Wibracht have raised a genuine issue of material fact as to the question of whether the contract limits their liability as individual indemnitors.**

Joe Muniz, Laura Wibracht, and Michael Wibracht all argue that the General Agreement on Indemnity limits their liability such that they are not liable for all of Travelers' losses. Defendants base this argument on Paragraph 20 of the contract, titled "Individual Indemnity," which provides as follows:

> The individual indemnity of Joe Alex Muniz shall apply to Jamco Ventures, LLC. only. The individual indemnity of Michael Wibracht or Laura Wibracht shall apply to Blackhawk Ventures, LLC. and MBH Ventures, LLC. only.

(General Agreement of Indemnity [#268-3] at ¶ 20.)  According to Muniz and the Wibrachts, this contractual provision expressly limits their liability to bonds issued for the listed entities only—as to Muniz, only Jamco Ventures, and as to the Wibrachts, only Blackhawk Ventures and MBH Ventures.  Yet the individual liability schedules for Muniz and the Wibrachts list over $5 million in losses related to bonds issued on behalf of Blackhawk JAMCO A SDVO.  (Muniz Liability Sched. [#268-30] at 2; Wibracht Liability Sched. [#268-33] at 2.)

Travelers takes the position that Muniz and the Wibrachts are liable to Travelers for claims on any bonds to which the obligations of JAMCO extend (as to Muniz) and to which the obligations of Blackhawk extend (as to the Wibrachts).  (Travelers Reply [#278] at ¶¶ 5–10; Travelers Reply [#279] at ¶¶ 5–10.)  Travelers maintains that these obligations include the Blackhawk/Jamco A SDVO bonds because Blackhawk/Jamco A SDVO is a contractual joint venture between Blackhawk Ventures and Jamco Ventures, for which both Blackhawk and Jamco are liable under the broad contractual definitions for "Bonds" and "Indemnitor" in Paragraph 1 of the General Agreement of Indemnity.  (*Id.*)

Paragraph 1 of the General Agreement of Indemnity defines "Indemnitors" as the signatories of the contract and signatories of any Additional Riders, as well as "their present and future direct and indirect subsidiaries, affiliates, and parent companies, and all of their successors and assigns, and any joint venture, co-venture, consortium, partnership, trust, association," etc. (General Agreement of Indemnity [#268-3] at ¶ 1.)  In that same paragraph, "Bonds" is defined as any bond or contractual undertaking on behalf of the indemnitors or "any present or future joint venture." (*Id.*)  Muniz and the Wibrachts argue that the specific language in Paragraph 20 overrides the more general definitions contained in Paragraph 1 of the contract, relying on general rules of contract interpretation.  *See Barnard Constr. Co. v. City of Lubbock*, 457 F.3d

425, 429 (5th Cir. 2006) ("if general terms appear in a contract, they will be overcome and controlled by specific language dealing with the same subject") (quoting *City of San Antonio v. Heath & Stich, Inc.*, 567 S.W.2d 56, 60 (Tex. Civ. App.—Waco 1978, writ ref'd n.r.e.)). Travelers' interpretation of the contract is that the individual liability of Muniz and the Wibrachts follows the liability of JAMCO and Blackhawk, both of which are liable for the bonds issued on behalf of their joint venture. The parties also dispute whether Blackhawk/Jamco A SDVO was created prior to or subsequent to the execution of the contract, such that liability could have been imposed on it by name in the contract.

How the parties intended to integrate Paragraphs 1, which expands liability to joint ventures and for bonds issued on behalf of such ventures, and Paragraph 20, which expressly limits liability of Muniz and the Wibrachts, is unclear. Under Texas law, a contract "is ambiguous when its meaning is uncertain and doubtful or it is reasonably susceptible to more than one meaning." *Grand View PV Solar Two, LLC v. Helix Elec., Inc./Helix Elec. of Nevada, L.L.C., J.V.*, 847 F.3d 255, 258 (5th Cir. 2017) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (citation omitted)). "The interpretation of an unambiguous contract is a matter of law; the interpretation of an ambiguous contract through extrinsic evidence of the parties' intent is a matter of fact." S. *Nat. Gas Co. v. Pursue Energy*, 781 F.2d 1079, 1081 (5th Cir. 1986). "Thus, a district court may properly grant summary judgment when a contract is unambiguous, but may not grant summary judgment when a contract is ambiguous and the parties' intent presents a genuine issue of material fact." *Id.* Because the General Agreement of Indemnity is

susceptible to more than one meaning as to the liability of Muniz and the Wibrachts, the intent of the parties and the interpretation of the contract is for a factfinder, not this Court, to decide.[7]

**D.      The Blackhawk Defendants have failed to raise a genuine issue of material fact on the question of whether James Brian Taylor, Frameeda Taylor, and Padron Enterprises are liable for losses incurred prior to the execution of their Additional Riders.**

The Blackhawk Defendants contend that the Additional Riders executed by James Brian Taylor and Frameeda Taylor on April 10, 2013 and Padron Enterprises on January 3, 2013 were not supported by adequate consideration and are therefore invalid.  (Blackhawk Resp. [#275] at ¶ 16.)   According to the Blackhawk Defendants, there must be new and separate consideration for the riders to impose liability on the Taylors and Padron Enterprises for bonds issued before the Riders were executed, i.e., for these Defendants to be required to indemnify Travelers for its preexisting contractual obligations.  (*Id.*)  The Court should reject this argument.

Under Texas law, a written contract presumes consideration for its execution.  *Doncaster v. Hernaiz*, 161 S.W.3d 594, 603 (Tex. App.—San Antonio 2005, no pet.).  The party alleging lack of consideration has the burden of proof to rebut this presumption and raise this argument as an affirmative defense to the validity of the contract.  *Id.*  Nowhere in the Blackhawk Defendants' pleadings do they assert the affirmative defense of inadequate consideration. (Blackhawk Am. Answer [#109].)  Nor have these Defendants proffered sufficient proof to show there was a failure of consideration.

---

[7] There is no similar provision limiting the liability of any other Defendant.  The Court should therefore reject Jamco's argument that it did not agree to indemnify claims related to Blackhawk-JAMCO SDVO.  (Jamco Resp. [#273] at ¶ 4.)  Jamco admitted in its pleadings that Jamco Ventures is a member of this limited liability company. (Jamco Am. Answer [#113] at ¶ 26.)  Again, the contract requires indemnification for any losses on any bond, which the contract defines as any bond or contractual undertaking on behalf of the indemnitors or "any present or future joint venture."  (General Agreement of Indemnity [#268-3] at ¶ 1.)  Jamco cannot now attempt to dispute its relationship to Blackhawk-JAMCO SDVO in order to avoid liability on bonds issued for the joint venture.

The Additional Riders executed by the Taylors and Padron Enterprises are by their express terms "incorporated into, and form[] a part of, the General Agreement of Indemnity." (Additional Riders [#268-6, #268-7].) The General Agreement of Indemnity provides that it was executed "in consideration of" Travelers' execution and delivery of one or more bonds and for Travelers' promise to refrain from canceling one or more bonds, which by definition includes bonds executed before, on, or after the execution of the Agreement." (General Agreement of Indemnity [#268-3] at 2.) Additionally, the riders executed by the Taylors and Padron Enterprises provide that these Defendants have "a substantial, material and beneficial interest (a) in the obtaining of Bonds by any of the Indemnitors; and (b) in the transaction(s) for which any other Indemnitor has applied or will apply to [Travelers] for Bonds pursuant to the Agreement." (Additional Riders [#268-6, #268-7].) Accordingly, the General Agreement of Indemnity and the Additional Riders both set forth that the parties contemplate consideration for both preexisting and future bonds. In short, even if the Blackhawk Defendants had properly pleaded failure of consideration, they have cited no authority or otherwise demonstrated that this type of rider arrangement is unenforceable as a matter of law. Accordingly, there is no genuine dispute on the validity of the contract at issue, and the Court should reject the argument of these Defendants regarding the lack of consideration.

**E.      Maria Bass f/k/a Maria Padron has failed to raise a genuine issue of material fact on the question of whether her signature on the General Agreement of Indemnity is a forgery.**

Maria Bass f/k/a Maria Padron contends that she is not an indemnitor under the contract because she never signed the General Agreement of Indemnity and her signature was forged by her ex-husband Michael Padron. (Maria Bass Response [#269].) However, the only evidence Bass provides in support of her claim of forgery is an unsworn declaration. (Maria Bass Decl.

[#269-1].)  The declaration states that the signature on the contract is "in fact a forgery" and that until she was given notice of this lawsuit, she was not aware of the General Indemnity Agreement or the underling factual basis as to why the Agreement was executed.  (Maria Bass Decl. [#269-1].)

Travelers objects to the declaration because it is unsworn.  "It is a settled rule in this circuit that an unsworn affidavit is incompetent to raise a fact issue precluding summary judgment."  *Nissho–Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1306 (5th Cir. 1988).  A statutory exception to this general rule provides that an unsworn declaration is admissible only if the declarant makes the declaration "under penalty of perjury" and verifies that the contents of the declaration are "true and correct."  28 U.S.C. § 1746.  Although Bass's declaration states that she makes the declaration "under penalty of perjury," she does not verify the contents of her declaration as "true and correct" as required by statute.  Because Plaintiff's unsworn declaration does not comply with both of the requirements of the statutory exception, it is not proper summary judgment evidence and must be disregarded.  *See Bitterroot Holdings, LLC v. MTGLQ Inv'rs, L.P.*, No. 5:14-CV-862-DAE, 2015 WL 6442622, at *3 (W.D. Tex. Oct. 23, 2015), *aff'd sub nom. Bitterroot Holdings, L.L.C. v. MTGLQ Inv'rs, L.P.*, 648 Fed. App'x 414 (5th Cir. 2016) ("A declaration lacking a statement that its contents are true and correct is not in substantial conformity with the statute and may not be considered as competent evidence on summary judgment.").

Accordingly, Maria Bass has failed to raise a genuine issue of fact on the question of her liability as an Indemnitor under the General Agreement of Indemnity and is therefore unable to defeat Travelers' motion for summary judgment.  Nothing in this finding prevents Bass from pursuing her cross-claim for indemnification and release from her ex-husband Michael Padron.

**F.  Travelers is entitled to attorneys' fees but has failed to establish that its claimed fees are reasonable as a matter of law.**

Travelers seeks to recover its attorneys' and other professional fees incurred in connection with the bonds at issue and the General Indemnity Agreement. The General Agreement of Indemnity entitles Travelers to recover its "attorneys' and other professional fees." (General Agreement of Indemnity [#268-3] at ¶ 1.)  Thus, it is indisputable that the indemnitors who are liable to Travelers under contract, as described above, are also liable to Travelers for attorneys' fees as a matter of law.  The disputed issue is whether the amount Travelers claims it incurred is indeed reasonable and necessary.

The Alexander Affidavit states that, as of March 31, 2018, Travelers has incurred $2,739,959.05 in attorneys' fees and other professional expenses.  (Alexander Aff. [#268-2] at ¶ 25.)  These fees include fees paid to outside legal counsel, professional engineering and construction management services, forensic accountants and financial investigators, and for employee travel.  (*Id.* at ¶¶ 26–31.)  To support Alexander's assertions, Travelers attaches to its motion for summary judgment a document entitled, "Attorneys' Fees, Professional Fees, and Expenses Schedule."  (Fees Schedule [#268-12.)  The document is a four-page spreadsheet listing invoices paid to various entities.  There is no description accompanying the various entries of the work performed, services provided, or purposes of the employee travel reimbursed.

It is Travelers position that the summary judgment entered by the Court should include a judgment for these fees without any further inquiry by the Court into the reasonableness of the fees incurred, because the contract's definition of "Loss" includes "attorneys' and other professional fees" and the contract's prima-facie clause renders the affidavit and fee schedule sufficient to establish these damages.  (Travelers Reply [#278] a ¶¶ 18–25.)

Travelers does not identify Texas law that supports this position that the Court cannot evaluate whether the fees are incurred are reasonable. In addition to contradicting how attorneys' fees awards are generally handled in federal court, Travelers position is tension with Texas law, under which a surety may recover only those fees that are reasonable. *Hanover Ins. Co. v. Kochhar*, No. SA-12-CA-1165, 2013 WL 12108597, at *3 (W.D. Tex. Sept. 27, 2013) (citing *United States Fid. & Guar. Co. v. Paulk*, 15 S.W.2d 100, 105–06 (Tex. App.—Texarkana 1929, no writ)); *see also Crimson Expl., Inc. v. Intermarket Mgmt., LLC*, 341 S.W.3d 432, 446 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (rejecting argument that movant was not required to show the reasonableness of the attorney's fees recovered in indemnity and collecting cases holding same). The Fifth Circuit has not squarely addressed this issue in a case involving Texas law, but in an opinion applying Mississippi law, the Fifth Circuit has stated that "an indemnity agreement is not a blank check; it does not entitle the surety company to reimbursement for legal fees which are unreasonable or unnecessary." *Jackson v. Hollowell*, 685 F.2d 961, 966 (5th Cir. 1982). A more substantial record might enable the District Court to conclude as a matter of law that Travelers incurred expenses were indeed reasonable and necessary. *Cf. Avenell*, 66 F.3d at 722 (affirming district court's award of attorney's fees on indemnity agreement governed by Texas law at summary judgment where surety submitted "detailed affidavit listing [counsel's] activities in preparation for the case, including the number of hours worked, the number of hours he anticipated working on the appeal, and his hourly rate"); *but see Hanover Ins. Co.*, 2013 WL 12108597, at *3 (citing *Jackson*, 685 F.2d at 966–67) ("Reasonable necessity and good faith are fact issues, typically for a jury to decide.").

In sum, Travelers is entitled to recover its attorneys' fees under the governing contract. (General Agreement of Indemnity [#268-3] at ¶ 1.) However, the present record on the fees

incurred is not sufficient for the Court to find, as a matter of law, that the amounts sought are reasonable. *See St. Paul Mercury Ins. Co. v. Lewis-Quinn Constr.*, No. CV H-10-5146, 2012 WL 12894737, at *12 (S.D. Tex. Sept. 25, 2012). The Court should therefore grant Travelers' motion for summary judgment insofar as Defendants must pay reasonable and necessary fees and expenses but deny, without prejudice, Travelers' motion insofar as it asks the Court to conclude that $2,739,959.05 represents reasonable fees and expenses as a matter of law. The Court should permit Travelers to file a motion seeking these fees with an expanded record showing the reasons the amount of attorneys' time spent was reasonable and necessary to its claims for contractual indemnity. *See id.*

## G.      Travelers is entitled to prejudgment interest.

Milcon and the Jamco Defendants argue that Travelers is not entitled to prejudgment interest at a rate of 18% per annum, but fails to cite any authority to support this position. (Milcon Resp. [#272] at ¶ 4; Jamco Response [#273] at ¶ 9.) The Court should reject this argument.

Texas law governs the award of prejudgment interest in this diversity case. *Harris v. Mickel*, 15 F.3d 428, 429 (5th Cir. 1994) (citations omitted). A prevailing party in a contract case in Texas is entitled to an award of prejudgment interest "in all but exceptional circumstances." *Nautilus, Inc. v. ICON Health & Fitness, Inc.*, No. SA-16-CV-00080-RCL, 2018 WL 2107729, at *2 (W.D. Tex. May 7, 2018) (citing *Am. Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 541 (5th Cir. 1987)). Defendants' position lacks merit.

Additionally, Travelers' request for 18% prejudgment interest is recoverable, as the contract at issue defines "Loss" to include interest at the maximum legal rate. (General Agreement of Indemnity [#268-3] at ¶ 1). In Texas, the maximum legal rate is 18%. Tex. Fin.

Code § 303.009(a); *see also People's United Equip. Fin. Corp. v. Morris*, No. CV H-16-3657, 2018 WL 287860, at *3 (S.D. Tex. Jan 4, 2018) ("Because the parties agreed to the maximum rate that state law permits, the court GRANTS People's United prejudgment interest at the 18% limit.").

### IV.  Conclusion and Recommendation

After considering Travelers' motion for summary judgment, the responses of Defendants, Travelers' replies, the arguments of counsel at the Court's January 9, 2019 hearing, and the governing law, the undersigned concludes the motion should be granted in part and denied in part as follows:

- The Court should deny summary judgment to Travelers on its claims of contractual indemnity (Counts IV and V of Travelers' Amended Complaint [#106]) against Defendants Joe Alex Muniz, Michael Wibracht, and Laura Wibracht as a genuine issue of material fact remains as to the scope of these individual indemnitors' liability under the contract.

- The Court should grant summary judgment to Travelers on its claim for attorneys' and other fees but deny the motion insofar as it asks the Court to find as a matter of law that Travelers' requested fees in excess of $2.7 million are recoverable and reasonable as a matter of law.  The Court should direct Travelers to file a motion for fees that is supported by a more detailed record.

- In all other respects, the motion should be granted.

### V.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The party shall file

the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 30th day of January, 2019.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE